IN THE MATTER OF THE FORECLOSURE OF A DEED OF TRUST EXECUTED BY TONYA R. BASS IN THE
ORIGINAL AMOUNT OF $139,988.00 DATED OCTOBER 12, 2005, RECORDED IN BOOK 4982,
PAGE 86, DURHAM COUNTY REGISTRY, SUBSTITUTE TRUSTEE SERVICES, INC., AS
SUBSTITUTE TRUSTEE

No. COA11-565

(Filed 6 December 2011)

**1. Evidence—improper classification as findings of fact—conclusions of law**

The trial court improperly classified multiple legal conclusions as findings of fact. The pertinent determinations each involved application of legal principles and were thus more properly classified as conclusions of law.

**2. Mortgages—summary foreclosure proceeding—power of sale—failure to establish holder of note—facial invalidity of stamp on note**

The trial court did not err by dismissing petitioner's summary foreclosure proceedings under a power of sale against respondent. Petitioner failed to establish that it was the holder of the note. The facial invalidity of a stamp on the note was competent evidence from which the trial court could conclude the stamp was unsigned and failed to establish negotiation from Mortgage Lenders to Emax.

Appeal by Petitioner from order entered 14 September 2010 by Judge Abraham Penn Jones in Durham County Superior Court. Heard in the Court of Appeals 27 October 2011.

*K&L Gates, LLP, by A. Lee Hogewood, III and Brian C. Fork, for Petitioner-appellant.*

*Legal Aid of North Carolina, Inc., by E. Maccene Brown, Gregory E. Pawlowski, John Christopher Lloyd, and Andre C. Brown, for Respondent-appellee.*

HUNTER, JR., Robert N., Judge.

U.S. Bank, National Association, as Trustee, c/o Wells Fargo Bank, N.A. ("Petitioner") appeals the trial court's order dismissing foreclosure proceedings against Respondent Tonya R. Bass. Petitioner assigns error to the trial court's determination that Petitioner is not the legal holder of a promissory note executed by

Respondent and therefore lacks authorization to foreclose on Respondent's property securing the note under a deed of trust. After careful review, we affirm.

## I. Factual & Procedural Background

On 12 October 2005, Respondent executed an adjustable rate promissory note (the "Note") in favor of Mortgage Lenders Network USA, Inc. ("Mortgage Lenders"). The Note evidences Respondent's promise to pay Mortgage Lenders the principal amount of $139,988.00 plus interest in monthly installments of $810.75 beginning December 2005. The terms of the Note state that Respondent will be in default if she fails to "pay the full amount of each monthly payment on the date it is due." Respondent secured the Note with a Deed of Trust encumbering real property located at 4240 Amberstone Way in Durham. The Deed identifies Mortgage Lenders as the lender and Mitchell L. Hefferman as trustee. The Deed of Trust also sets forth a power of sale clause providing that Respondent's default on her monthly payment obligations under the terms of the Note and failure to cure such default could result in foreclosure of Respondent's property as described in the Deed of Trust.

The record indicates Respondent fell behind on her monthly payments under the Note and, to date, is current on payments only through July 2008. As discussed further *infra*, the Note was purportedly transferred several times before coming into Petitioner's possession. On or about 10 January 2008, Petitioner, as "holder of the Note evidencing the entire indebtedness secured by the [] Deed of Trust," filed an Appointment of Substitute Trustee with the Durham County Register of Deeds. The Appointment of Substitute Trustee purportedly removed Mr. Hefferman as trustee under the Deed of Trust and replaced him with Substitute Trustee Services, Inc. ("Substitute Trustee"). On 27 March 2009, Substitute Trustee commenced foreclosure proceedings against Respondent by filing a Notice of Foreclosure Hearing in Durham County Superior Court in accordance with North Carolina General Statutes § 45-21.16. The Notice of Fore-closure Hearing stated Petitioner's intent to foreclose "on the Note and Deed of Trust . . . because of [Respondent's] failure to make timely payments" on the Note.

On 8 April 2010, a foreclosure hearing was held before the Clerk of Durham County Superior Court. Upon consideration of the statutorily prescribed elements, see N.C. Gen. Stat. § 45-21.16(d) and discussion *infra*, the clerk of court entered an order permitting Substitute Trustee to proceed with foreclosure of Respondent's prop-

erty. Respondent timely appealed the clerk's order to the superior court, and foreclosure of Respondent's property was stayed pending outcome of the appeal. Respondent's appeal to the superior court was continued twice as she attempted, unsuccessfully, to negotiate a loan modification with Petitioner.

On 16 August 2010, this matter was heard before Superior Court Judge Abraham Penn Jones. Petitioner introduced evidence establishing: Respondent's default on her payment obligations under the Note, the Note was secured by the Deed of Trust, the Deed of Trust set forth a power of sale clause, and Respondent was properly served with notice of the foreclosure hearing. Petitioner also produced the original Note and Deed of Trust through the testimony of Erin Hirzel-Roesch, a Wells Fargo litigation specialist, and introduced copies of each document for examination by the court.

The Note as introduced before the trial court consists of five pages with a one-page "ALLONGE TO NOTE" ("the Allonge") attached as page six. The fifth page of the Note bears three stamps purportedly indorsing and transferring the Note among prior holders and, ultimately, to Petitioner. The first stamp reads "PAY TO THE ORDER OF EMAX FINANCIAL GROUP, LLC WITHOUT RECOURSE By: MORTGAGE LENDERS NETWORK USA, INC" and bears no handwritten signature. The second stamp reads "RESIDENTIAL FUNDING CORPORATION CHAD JONES VICE PRESIDENT" and bears the apparent handwritten signature of Chad Jones. The third stamp reads "PAY TO THE ORDER OF U.S. Bank National Association as Trustee WITHOUT RECOURSE Residential Funding Corporation by Judy Faber, Vice President" and bears the apparent handwritten signature of Judy Faber. The Allonge, dated 25 October 2005, states "Pay to the order of Without recourse: Residential Funding Corporation." The Allonge bears the apparent handwritten signature of "Michele Morales" and identifies Ms. Morales as "Manager of Sales and Acquisitions [at] Emax Financial Group, LLC."

Respondent did not testify or present evidence at the foreclosure appeal hearing. Respondent contended only that Petitioner "is not entitled to foreclose because [Petitioner is] not the proper holder of [the Note]." Specifically, Respondent asserted that the indorsement from Mortgage Lenders to Emax Financial Group, LLC ("Emax") was not a proper indorsement because "you have to have more than a stamp" and "We don't know who had authority [at Mortgage Lenders] to authorize the sale of (unintelligible) to [Emax]." Respondent also challenged the indorsement from Emax to Residential Fundings

**IN RE FORECLOSURE OF BASS**

[217 N.C. App. 244 (2011)]

Corporation ("Residential") because "[t]here is nothing on the last page of [the Note] to show how and where [Residential] got this commercial paper."

The trial court entered an order on 13 September 2010 dismissing Petitioner's foreclosure proceedings against Respondent. In its order, the trial court found as fact, *inter alia,* that the indorsement from Mortgage Lenders to Emax was not signed, and the indorsement from Emax to Residential did not indicate the source of the transfer. The trial court concluded as a matter of law that, in light of these ineffective indorsements, Petitioner was not the legal holder of the Note and was not authorized to appoint a substitute trustee to institute foreclosure proceedings against Respondent. Petitioner filed its Notice of Appeal with this Court on 3 November 2010.

## II. Analysis

"There are two methods of foreclosure possible in North Carolina: foreclosure by action and foreclosure by power of sale." *Phil Mech. Const. Co., Inc. v. Haywood,* 72 N.C. App. 318, 321, 325 S.E.2d 1, 3 (1985). A foreclosure by action consists of a formal judicial proceeding; a foreclosure by power of sale, in contrast, is a "special proceeding[1]" "whereby '[t]he parties have agreed to abandon the traditional foreclosure by judicial action in favor of a private contractual remedy to foreclose.' " *In re Adams,* ___ N.C. App. ___ , ___ , 693 S.E.2d 705, 708 (2010) (citation omitted) (alteration in original); *In re Goforth Properties, Inc.,* 334 N.C. 369, 374, 432 S.E.2d 855, 858 (1993) (" 'Historically, foreclosure pursuant to a power of sale in a deed of trust ha[s] been a private contract remedy.' " (citations omitted)).

A mortgagee or trustee seeking to exercise a power of sale under a deed of trust must establish four elements before the clerk of court in order to proceed with foreclosure: (1) a valid debt exists and the foreclosing party is the holder of the debt; (2) the debtor has defaulted on the debt; (3) the instrument evidencing the debt permits foreclosure; and (4) proper notice has been provided to all entitled parties.[2] *See* N.C. Gen. Stat. § 45-21.16(d) (2009); *In re Adams,* ___

---

1. "Since rights sought to be enforced under [the provisions of the North Carolina General Statutes governing foreclosure pursuant to a power of sale] are instituted by filing notice instead of a complaint and summons and are prosecuted without regular pleadings, they are properly characterized as 'special proceedings.' " *Id.* at 321, 325 S.E.2d at 2-3.

2. The North Carolina Legislature added a fifth consideration, which expired 31 October 2010, requiring the clerk to determine whether the underlying mortgage debt was a subprime home loan, and, if it was a subprime loan, whether written notice of

N.C. App. at ___ , 693 S.E.2d at 709. The scope of the foreclosure hearing before the clerk of court is strictly limited to these four issues because foreclosure under a power of sale provision in a deed of trust is intended to serve as "a means of avoiding lengthy and costly foreclosures by action." *In re Watts*, 38 N.C. App. 90, 94, 247 S.E.2d 427, 429 (1978). Our Courts have stressed, however, that "while a power of sale provision is meant to 'function as a more expeditious and less expensive alternative to a foreclosure by action,' 'foreclosure under a power of sale is not favored in the law, and its exercise will be watched with jealousy.' " *In re Adams*, ___ N.C. App. at ___ , 693 S.E.2d at 708 (citations omitted). The clerk of court's order authorizing or dismissing foreclosure is appealable to the superior court. N.C. Gen. Stat. § 45-21.16(d)(1) (2009). On appeal, the superior court reviews *de novo* the same four issues described *supra. See id.*

The superior court's order dismissing foreclosure is a final judgment, and, therefore, this Court exercises jurisdiction over Peti-tioner's appeal pursuant to North Carolina General Statutes § 7A-27(b) (2009). Our review of the trial court's order dismissing foreclosure is limited to determining "whether competent evidence exists to support the trial court's findings of fact and whether the conclusions [of law] reached [by the trial court in its order dismissing foreclosure] were proper in light of the findings [of fact]." *In re Azalea Garden Bd. & Care, Inc.*, 140 N.C. App. 45, 50, 535 S.E.2d 388, 392 (2000). "Findings of fact by the trial court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*." *Holden v. John Alan Holden*, ___ N.C. App. ___ , ___ , 715 S.E.2d 201, 209 (2011).

**[1]** Before applying this standard in the instant case, we note the trial court incorrectly classified multiple legal conclusions as "findings of fact." This Court has recognized that "[t]he classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997). Nonetheless, proper classification is critical because it shapes this Court's review of the issues on appeal. Significant deference is afforded to the trial court's findings of fact under the "competent evidence" standard. *See State v. Hagin*, ___ , N.C. App. ___ ,

the foreclosure proceedings was provided at least 45 days prior to filing notice of the foreclosure hearing with the superior court. *See* N.C. Gen. Stat. § 45-102 (2009); *In re Simpson*, ___ N.C. App. ___ , ___ , 711 S.E.2d 165, 169 (2011) (citing N.C. Gen. Stat. § 45-21.16 (2009)).

___ , 691 S.E.2d 429, 431, *review denied,* ___ N.C. ___ , 702 S.E.2d 500 (2010) ("The trial court's findings are conclusive 'if supported by any competent evidence even if there is evidence to the contrary that would support different findings.' " (citation omitted)). In contrast, we afford no deference to the trial court's conclusions of law. *See Goldston v. State,* 199 N.C. App. 618, 625, 683 S.E.2d 237, 242 (2009) ("Because we review questions of law *de novo,* we give no deference to the trial court's rulings . . . ."). Generally, "any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." *In re Helms,* 127 N.C. App. at 510, 491 S.E.2d at 675 (internal citations omitted). A "determination reached through 'logical reasoning from the evidentiary facts' is more properly classified a finding of fact." *Id.* (citation omitted).

Here, the trial court found as fact *and* concluded as a matter of law the following: (1) purported prior holders of the Note, Mortgage Lenders and Emax, did not properly indorse and transfer the Note, (2) Petitioner is not the legal holder of the Note, (3) Petitioner did not have authority to appoint a substitute trustee because it was not the legal holder of the Note, and (4) Petitioner did not have authority to commence foreclosure proceedings against Respondent. We conclude that these determinations each involve application of legal principles and are more properly classified as conclusions of law. We reclassify these "findings of fact" as conclusions of law and apply our standard of review accordingly. *See N.C. State Bar v. Key,* 189 N.C. App. 80, 88, 658 S.E.2d 493, 499 (2008) ("[C]lassification of an item within the order is not determinative, and, when necessary, the appellate court can reclassify an item before applying the appropriate standard of review.").

[2] Of the issues considered by the clerk of court and subsequently reviewed *de novo* by the trial court, the sole issue presented on appeal to this Court is whether Petitioner, as the party seeking foreclosure under a power of sale, is the holder of a valid debt. *See* N.C. Gen. Stat. § 45-21.16(d) (2009). Respondent is "entitled to demand strict proof of this element." *Liles v. Myers,* 38 N.C. App. 525, 528, 248 S.E.2d 385, 388 (1978).

This Court has described this inquiry as follows:

> In order to find that there is sufficient evidence that the party seeking to foreclose is the holder of a valid debt in accordance with N.C.G.S. § 45-21.16(d), this Court has determined that the following two questions must be answered in the affirmative:

**IN RE FORECLOSURE OF BASS**

[217 N.C. App. 244 (2011)]

> (1) 'is there sufficient competent evidence of a valid debt?';
> and (2) 'is there sufficient competent evidence that [the party
> seeking to foreclose is] the holder of the notes [that evidence
> that debt]?'

*In re Adams*, ___ N.C. App. at ___ , 693 S.E.2d at 709 (alterations in original) (citations omitted). We note that the separation of this statutory requirement into two distinct inquiries is a simplification tool and does not alter our standard of review. This Court constructed the "sufficient competent evidence" standard to serve as guidance in the clerk of court's application of North Carolina General Statutes § 45-21.16(d). *See, e.g.*, *In re Burgess*, 47 N.C. App. 599, 603, 267 S.E.2d 915, 918 (1980) ("[W]e construe G.S. 45-21.16(d)(i) to permit the clerk to find a 'valid debt of which the party seeking to foreclose is the holder' if there is competent evidence that the party seeking to foreclose is the holder of some valid debt, irrespective of the exact amount owed."); *In re Simpson*, ___ N.C. App. at ___ , 711 S.E.2d at 171 ("[I]n order for the foreclosure to proceed, *the clerk of court* must find . . . the existence of a valid debt . . . ." (citing N.C. Gen. Stat. § 45-21.16(d) (2009)) (emphasis added) (internal quotation marks omitted)). Whether a party is the holder of a valid debt and whether a valid debt exists are questions of law. *See In re Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675 ("[A]ny determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." (internal citations omitted)). As such, this Court must determine whether the trial court's conclusions with respect to these questions are supported by its findings and, in turn, whether such findings are supported by competent evidence. *See supra*.

In the case *sub judice*, the existence of a valid debt is not in dispute—Respondent concedes she has defaulted under the terms of the Note. The sole issue remaining is whether Petitioner is the legal holder of the Note evidencing Respondent's debt. This determination is critical because it "protect[s] [Respondent] from the threat of multiple judgments on the [Note]." *In re Simpson*, ___ N.C. App. at ___ , 711 S.E.2d at 171. Absent this requirement, the Note could be negotiated " 'to a third party who would become a holder in due course, bring a suit upon the [Note] . . . and obtain a judgment in her favor.' " *Id.* (quoting *Liles*, 38 N.C. App. at 527, 248 S.E.2d at 387). Requiring the foreclosing party to introduce "sufficient competent evidence" that it " 'is the holder of the note at the time of [the] suit reduces the possibility of such an inequitable occurrence.' " *Id.* (quoting *Liles*, 38 N.C. App. at 527, 248 S.E.2d at 387).

## IN RE FORECLOSURE OF BASS

[217 N.C. App. 244 (2011)]

In determining whether the foreclosing party is the holder of a valid debt for purposes of North Carolina General Statutes § 45-21.16(d), this Court has applied the definition of "holder" as set forth in North Carolina's adoption of the Uniform Commercial Code ("UCC"). *See In re Connolly*, 63 N.C. App. 547, 550, 306 S.E.2d 123, 125 (1983). North Carolina General Statutes § 25-1-201 defines "holder" as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." N.C. Gen. Stat. § 25-1-201(b)(21) (2009). This Court has also defined "holder" under former North Carolina General Statutes § 25-1-201(20) as " 'a person who is in possession of . . . an instrument . . . issued or indorsed to him or to his order.' " *In re Connolly*, 63 N.C. App. at 550, 306 S.E.2d at 125 (citation omitted) (alterations in original). Any " 'individual, corporation, business trust, estate, trust . . . or any other legal or commercial entity' " can serve as the holder of a promissory note. *In re Simpson*, ___ N.C. App. at ___ , 711 S.E.2d at 171 (quoting N.C. Gen. Stat. § 25-1-201(b)(27) (2009)) (alteration in original).

A person may become the holder of an instrument: (1) through issuance of the instrument to that person or (2) through negotiation of the instrument to that person. *See* N.C. Gen. Stat. § 25-3-201(b) (2009); N.C. Gen. Stat. § 25-3-201 cmt. 1 (2009). Issuance of an instrument occurs through "first delivery" of the instrument by the maker of the instrument. N.C. Gen. Stat. § 25-3-105(a) (2009). The record before this Court establishes that Respondent issued the Note in favor of Mortgage Lenders. *See* N.C. Gen. Stat. § 25-3-103(a)(5) (2009) (defining "maker" as "a person who signs . . . a note as a person undertaking to pay"); N.C. Gen. Stat. § 25-1-201(b)(15) (2009) (defining "delivery" of an instrument as a "voluntary transfer of possession"); N.C. Gen. Stat. § 25-3-110(a) (2009) ("The person to whom an instrument is initially payable is determined by the intent of the person . . . signing as . . . the issuer of the instrument.").

The second method through which a person becomes the holder of an instrument, negotiation, occurs when a person other than the issuer transfers possession of the instrument to a person who becomes its holder. *See* N.C. Gen. Stat. § 25-3-201 (2009). Mortgage Lenders, as a party in possession of a promissory note made payable to its order was the original holder of the Note. In order for Mortgage Lenders to negotiate the Note, thereby conferring "holder" status upon a subsequent transferee, Mortgage Lenders was required to (1) indorse the Note and (2) transfer possession of the Note to the intended transferee. N.C. Gen. Stat. § 25-3-201(b) (2009) ("[I]f an

instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder.").

Petitioner contends the stamps on the fifth page of the Note and the accompanying Allonge establish: (1) Mortgage Lenders indorsed and negotiated the Note to Emax, (2) Emax indorsed and negotiated the Note to Residential, and (3) Residential indorsed and negotiated the Note to Petitioner. Petitioner further contends that because these stamps establish proper negotiation of the Note to Petitioner, and because Petitioner is currently in possession of the Note, the trial court erred in concluding that Petitioner is not the holder of the Note.

Petitioner produced the original Note at the de novo foreclosure hearing through the testimony of Ms. Hirzel-Roesch. However, "[p]roduction of an original note at trial does not, in itself, establish that the note was transferred to the party presenting the note with the purpose of giving that party the right to enforce the instrument." *In re Simpson,* ___ N.C. App. at ___ , 711 S.E.2d at 171. The critical question is whether the Note was properly negotiated through the chain of purported holders such that Petitioner is the holder of the Note.

We begin by examining the first stamp on page five of the Note. The stamp reads:

PAY TO THE ORDER OF:
EMAX FINANCIAL GROUP, LLC
WITHOUT RECOURSE
BY: MORTGAGE LENDERS NETWORK USA, INC.

Petitioner contends this stamp represents Mortgage Lender's indorsement of the Note for purposes of negotiating the Note to Emax. We cannot agree.

An indorsement is "a signature, other than that of a signer or maker . . . that alone or accompanied by other words [may be] made on an instrument for the purpose of . . . negotiating the instrument . . . ." N.C. Gen. Stat. § 25-3-204(a)(i) (2009). "[R]egardless of the intent of the signer, a signature and its accompanying words is an indorsement, unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement." N.C. Gen. Stat. § 25-3-204(a)(iii) (2009). North Carolina has adopted a broad definition of "signature" to include any mark, symbol, or initials, which may be "printed, *stamped,* or written." N.C. Gen.

Stat. § 25-1-201(b)(37) cmt. 37 (2009) (emphasis added) ("[A] compete signature is not necessary. . . . No catalog of possible situations can be complete and the court must use common sense and commercial experience in passing upon these matters.").

Notwithstanding this broad definition, a symbol will constitute a signature only where "the symbol was adopted by the party with the present intent to authenticate the writing." *Id.* Moreover, an indorsment "does not prove itself, but must be established . . . by proper testimony." Our Supreme Court has specifically held that a stamp may constitute a valid indorsement, but only if the stamp is executed by a person having the intent and authority to do so. *Mayers v. McRimmon,* 140 N.C. 640, 642, 53 S.E. 447, 448 (1906); *Branch Banking & Trust Co. v. Gill,* 293 N.C. 164, 178, 237 S.E.2d 21, 29 (1977) (holding a stamp is sufficient to indorse a negotiable instrument if "done by a person authorized to indorse for the payee and with intent thereby to indorse").

At the foreclosure hearing, Petitioner did not introduce any evidence to establish that the stamp purportedly indorsing and transferring the Note from Mortgage Lenders to Emax is an authorized signature. Petitioner introduced only the Note itself, depicting, as the trial court found, a "stamp on the Promissory Note stat[ing] PAY TO THE ORDER OF: EMAX FINANCIAL GROUP, LLC, WITHOUT RECOURSE, BY: MORTGAGE LENDERS NETWORK USA, INC. This stamp is unsigned." Petitioner's sole witness, Ms. Hirzel-Roesch, admitted she had no personal knowledge of the transfers made by the purported prior holders of the Note beyond the information represented on the Note itself. Petitioner avers, however, that it was not required to produce additional evidence to establish the stamp's authenticity as an indorsement because a stamp falls within the broad statutory definition of "signature," and "[t]he language and location of the indorsement clearly and unambiguously show the stamp was made with the intention to transfer ownership of the note from Mortgage Lenders [] to Emax."

While it is true that a stamp *can* serve as a valid indorsement, our Supreme Court's rulings in *Mayers* and *Branch Banking & Trust Co,* *see supra,* clearly hold that the person placing the stamp must act with authorization and with the intent to indorse the instrument. *See supra.* The stamp at issue reflects only the name of an entity, Mortgage Lenders. Unlike the other stamps on the Note, no countersignature appears to indicate the capacity in which the signor acted in executing the stamp on behalf of Mortgage Lenders. This is a

troublesome omission, as "[a] corporation can only act through its agents," *Anderson v. Am. Suburban Corp.*, 155 N.C. 131, 71 S.E. 221, 222 (1911). Mortgage Lenders' liability on the Note turns on the authority (or lack thereof) of the individual executing the stamp, a determination impossible for this Court to make based solely upon the face of this stamp.

Petitioner contends that *Respondent* bears the burden of proving the stamp is an invalid signature. Petitioner cites North Carolina General Statutes § 25-3-308(a) as quoted in a recent decision of the United States Bankruptcy Court for the Middle District of North Carolina. The Court, considering the question of what evidence a subsequent holder of a promissory note must show to establish the authenticity of a prior indorsement stated "[i]f the validity of a signature is denied in the pleadings, the burden of establishing the validity is on the person claiming validity, but the signature is presumed to be authentic." *In re Vogler*, 2009 WL 4113704 at 2 (Bankr. M.D.N.C. 2009) (citing N.C. Gen. Stat. § 25-3-308(a)). Petitioner contends that in light of the presumption set forth under North Carolina General Statutes § 25-3-308(a), "[t]he indorsement stamp is presumed to be authentic, and that presumption cannot be overcome unless the Respondent presents evidence to contest such authenticity."

We note initially that a decision of the Bankruptcy Court is not binding on this Court. However, Petitioner's contention raises an apparent conflict among our General Statutes. On one hand, North Carolina General Statutes § 45-21.16(d) clearly places the burden upon Petitioner to prove it is the holder of a valid debt; North Carolina General Statutes § 25-3-308(a), however, presumes authenticity of a signature, apparently placing the burden upon Respondent to disprove the validity of an indorsement. We find Official Comment 1 under § 25-3-308 instructive. Official Comment 1 to North Carolina General Statutes § 25-3-308 states "[t]he question of the burden of establishing the signature arises only when it has been put in issue by specific denial." N.C. Gen. Stat. § 25-3-308(a) cmt. 1 (2009). Once put in issue, "[t]he burden is on the party claiming under the signature" to prove that the signature is valid. *Id.*

Petitioner contends Respondent did not raise objection to the stamp at issue and therefore the burden remained upon Respondent to introduce evidence invalidating the purported indorsement. Contrary to Petitioner's assertion, this Court's review of the transcript indicates that counsel for Respondent did in fact challenge the stamp's validity, stating: "you have to have more than a stamp" and

"we don't know who had authority [at Mortgage Lenders] to authorize the sale of (unintelligible) to [Emax]." We conclude that this challenge by Respondent before the trial court was a specific denial of the signature's authenticity, thereby placing the burden upon Petitioner to put on evidence establishing authorization.

Furthermore, Comment 1 to North Carolina General Statutes § 25-3-308 defines "presumed" to mean "that until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid." *Id.* In contrast to the stamp at issue, a handwritten signature accompanies each of the other stamps on the Note introduced by Petitioner before the trial court. The stamp purporting to transfer the Note from Residential to Petitioner, for example, bears the apparent handwritten signature of Judy Faber, identified as Residential's vice president. This signature provides at least some evidence that this stamp was executed with the requisite intent and authority. Whether a stamp bearing an apparent handwritten signature is sufficient competent evidence of the purported indorsement, however, is not before this Court as Respondent challenges the only stamp *without* a handwritten signature. The omission of a handwritten signature with respect to the challenged stamp is competent evidence from which the trial court could conclude that this particular stamp was not executed by an authorized individual and is therefore facially invalid indorsement. Thus, even if Respondent had failed to object to the stamp, which it did not, the burden properly remained upon Petitioner to prove its validity.

We further note it would be illogical to place this particular burden upon Respondent, as Petitioner is in possession of the Note and is in the best position to prove or disprove the authenticity of the signatures included thereon. *See Bank of Statesville v. Blackwelder Furniture Co.*, 11 N.C. App. 530, 532, 181 S.E.2d 785, 786 (1971) (holding that the burden of establishing the authority behind an indorsement was properly placed on the bank because "as a purchaser of the instrument, [the bank] was in the best position to inform itself as to the authority of the seller-indorser"). Because we cannot presume the authenticity of this stamp as a signature, and because Petitioner offered no evidence establishing its authenticity other than the Note itself, the stamp is a valid signature only if it is self-authenticating. However, as our Supreme Court has explained:

It is well settled by the decisions of this Court, as well as of other courts, and by approved text-writers, that words written on the

back of a negotiable instrument, purporting to be an indorsement by which the instrument was negotiated, do not prove themselves. The mere introduction of a note, payable to order, with words written on the back thereof, purporting to be an indorsement by the payee, does not prove or tend to prove their genuineness.

*Whitman, Inc. v. York*, 192 N.C. 87, 133 S.E. 427, 430 (1926) (citations omitted). In the case *sub judice*, Petitioner has offered only a bare assertion that the challenged stamp is a facially valid indorsement. Absent an allonge, testimony, or other evidence indicating that the stamp is an authorized signature, it would be imprudent for this Court to accept Petitioner's position. We hold that the facial invalidity of this stamp is competent evidence from which the trial court could conclude the stamp is "unsigned" and fails to establish negotiation from Mortgage Lenders to Emax. Consequently, Petitioner has failed to establish it is the holder of the Note, and the trial court did not err in dismissing Petitioner's summary foreclosure proceedings against Respondent. For the foregoing reasons, the trial court's order is

Affirmed.

Judges THIGPEN and MCCULLOUGH concur.