IN THE SUPREME COURT OF NORTH CAROLINA

No. 554PA11

FILED 8 MARCH 2013

IN THE MATTER OF THE FORECLOSURE OF A DEED OF TRUST EXECUTED BY TONYA R. BASS in the original amount of $139,988.00, dated October 12, 2005, recorded in Book 4982, Page 86, Durham County Registry

SUBSTITUTE TRUSTEE SERVICES, INC., AS SUBSTITUTE TRUSTEE

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 720 S.E.2d 18 (2011), affirming an order entered on 14 September 2010 by Judge Abraham Penn Jones in Superior Court, Durham County. Heard in the Supreme Court on 5 September 2012.

*K&L Gates LLP, by A. Lee Hogewood, III and Brian C. Fork, for petitioner-appellant U.S. Bank, National Association as Trustee, c/o Wells Fargo Bank, N.A.*

*Legal Aid of North Carolina, Inc., by E. Maccene Brown, Gregory E. Pawlowski, John Christopher Lloyd, and Andre C. Brown, for respondent-appellee.*

*Mallam J. Maynard for Financial Protection Law Center, Carlene McNulty for North Carolina Justice Center, Dawn T. Battiste for Land Loss Prevention Project, Stephanie M. Ceccato for Legal Services of Southern Piedmont, and William J. Whalen and Marjorie Beth Maynard for Pisgah Legal Services, amici curiae.*

MARTIN, Justice.

This foreclosure case presents the question of whether a mortgagor's bare assertion that "you have to have more than a mere stamp" to transfer a mortgage instrument excuses her from her debt obligation. We hold that it does not.

In October 2005 Tonya Bass executed an adjustable rate promissory note (the Note) with Mortgage Lenders Network USA, Inc. (Mortgage Lenders) in the principal amount of $139,988.00 plus interest in monthly installments of $810.75. The loan terms specified that if Bass failed to "pay the full amount of each monthly payment on the date it is due," she would be in default.

The Note was then transferred several times: from Mortgage Lenders to Emax Financial Group, LLC (Emax), from Emax to Residential Funding Corporation (Residential Funding), and finally from Residential Funding to U.S. Bank. Page five of the Note evidences these transfers, shown by three stamped imprints. The first stamp, the one challenged by Bass, reads:

Pay to the order of:
Emax Financial Group, LLC
without recourse
By: Mortgage Lenders Network USA, Inc.

The second stamp reads:

Residential Funding Corporation
Chad Jones
Vice President.

This stamp is accompanied by what appears to be the handwritten initials of Chad Jones. The Allonge to Note, which concerns this second transfer, states in part:

Pay to the order of Without recourse: Residential Funding Corporation
By: [Signature]
Name: Michele Morales
Manager of Sales and Acquisitions
Emax Financial Group, LLC.

This allonge bears a handwritten signature on the line designated for Michele Morales.  The final stamp reads:

> Pay to the order of
> U.S. Bank National Association as Trustee
> without recourse
> Residential Funding Corporation
> By [Signature]
> Judy Faber, Vice President.

This stamp is accompanied by the handwritten signature of Judy Faber.  The first stamp, which transferred ownership from Mortgage Lenders to Emax, did not identify the individual making the transfer.

In March 2009 U.S. Bank[1] filed this foreclosure action after Bass failed to make timely payments.  The Clerk of Superior Court of Durham County entered an order permitting the foreclosure to proceed.  Bass appealed the order to the Superior Court.  Prior to the hearing before the trial court, Bass served a brief on U.S. Bank alleging that the stamp transferring the Note from Mortgage Lenders to Emax was invalid because it lacked a signature.  Bass also asserted that U.S. Bank was required to produce the original Note, not a photocopy, in court, and that without the original Note the foreclosure action should be dismissed.

At the hearing, U.S. Bank responded to the arguments from Bass's brief and produced the original Note.  In response, Bass asserted, "[Y]ou have to have more than a mere stamp in order to pass ownership of commercial paper from one lender

---

[1] U.S. Bank appointed Substitute Trustee Services, Inc. as substitute trustee for the foreclosure proceedings.

to another lender." She also asserted, "We don't know who had authority a[t] Mortgage Lenders Network to authorize the sale of (unintelligible) to E-Max." However, she "did not testify at the hearing or offer evidence."

The trial court found as fact: "On the original Promissory Note the [i]ndorsement from Mortgage Lenders Network, Inc to Emax Financial Group, LLC is not signed[,] and the [i]ndorsement [from Emax] to Residential Funding Corporation does not indicate the source of the transfer to Residential Funding Corporation." The court concluded that because the Note "was not properly [i]ndorsed and conveyed to Emax Financial Group, LLC or Residential Funding Corporation," U.S. Bank was not the rightful holder of the Note and "lack[ed] the authority to pursue a foreclosure action against Respondent Tonya R. Bass under the subject Deed of Trust." Accordingly, the trial court dismissed the foreclosure action.

The Court of Appeals affirmed, relying on precedent from this Court that predated the adoption of the Uniform Commercial Code (UCC). The court held that "the facial invalidity of th[e] [first] stamp is competent evidence from which the trial court could conclude the stamp is 'unsigned' and fails to establish negotiation from Mortgage Lenders to Emax." *In re Foreclosure of Bass*, ___ N.C. App. ___, ___, 720 S.E.2d 18, 27 (2011). We reverse.

When an appellate court reviews the decision of a trial court sitting without a jury, "findings of fact have the force and effect of a verdict by a jury and are

4

conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary." *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968) (citations omitted). "Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004) (citation omitted).

Under N.C.G.S. § 45-21.16(d), four elements must be established before the clerk of superior court authorizes a mortgagee or trustee to proceed with foreclosure by power of sale: "(i) [a] valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, [and] (iv) notice to those entitled to such . . . ." N.C.G.S. § 45-21.16(d) (2011).[2] Bass challenges only the first requirement: whether U.S. Bank is the holder of the Note evidencing her debt.[3] This issue is a question of law controlled by the UCC, as adopted in Chapter 25 of the North Carolina General Statutes. *See Econo-Travel Motor Hotel Corp. v.*

---

[2] We observe that there was a fifth requirement, effective until October 31, 2010, that the clerk find that the underlying loan was not a subprime loan under N.C.G.S. § 45-101(4), and that if it was a subprime loan, that notice was given under N.C.G.S. § 45-102. N.C.G.S. § 45-21.16(d) (2009). The parties agree that this element is not at issue in this case.

[3] We also allowed discretionary review on whether the indorsement from Emax to Residential Funding was valid. Bass did not address this issue in her new Brief and even used Emax's indorsement as an example of a properly signed stamp to bolster her argument that the lack of a signature on the stamp transferring the Note from Mortgage Lenders to Emax rendered that stamp invalid. We observe that the stamp on the Allonge to Note was a valid indorsement under N.C.G.S. § 25-3-204(a) (2011); *see also id.* cmt. 1 (2011) ("An indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement.")

*Taylor*, 301 N.C. 200, 203, 271 S.E.2d 54, 57 (1980); *see also In re Foreclosure by David A. Simpson, P.C.*, ___ N.C. App. ___, ___, 711 S.E.2d 165, 171 (2011).

The UCC defines the holder of a negotiable instrument to include "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." N.C.G.S. § 25-1-201(b)(21)(a) (2011). When the party in possession is not the original holder, if the instrument is payable to an identified person, transfer requires indorsement by each previous holder. *Id.* § 25-3-201(b) (2011).

An indorsement is "a signature . . . that alone or accompanied by other words is made on an instrument for the purpose of . . . negotiating the instrument." *Id.* § 25-3-204(a) (2011). "[A] signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances *unambiguously indicate* that the signature was made for a purpose other than indorsement." *Id.* (emphasis added). Without unambiguous evidence to the contrary, a signature that "is not qualified in any way and appears in the place normally used for indorsements . . . may be an indorsement" even if the signer intended the signature to be something else. N.C.G.S. § 25-3-204 cmt. 1 (2011). The UCC drafters' strong presumption in favor of the legitimacy of indorsements protects the transfer of negotiable instruments by giving force to the information presented on the face of the instrument. *See* 6B Lary Lawrence, *Anderson on the Uniform Commercial Code* § 3-204:8R (3d ed. 2003) [hereinafter 6B

*Anderson*]; *see also* 6 William D. Hawkland & Lary Lawrence, U.C.C. Serv. (West) § 3-204:2 (Rev. Art. 3) [hereinafter Hawkland].

The UCC defines "signature" broadly, as "any symbol executed or adopted with present intention to adopt or accept a writing." N.C.G.S. § 25-1-201(b)(37) (2011). The official comment explains that,

> as the term "signed" is used in the Uniform Commercial Code, a complete signature is not necessary. The symbol may be printed, *stamped* or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible situations can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to adopt or accept the writing.

*Id.* § 25-1-201 cmt. 37 (2011) (emphasis added). Thus, the UCC does not limit a signature to a long-form writing of an individual person's name. *See* 1B Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 1-201:385 (3d ed. 2012) [hereinafter 1B *Anderson*]. Under this broad definition, "[t]he authenticating intent is sufficiently shown by the fact that the name of a party is written on the line which calls for the name of that party." *Id.* § 1-201:390. Even if there might be some irregularities in the signature, the necessary intent can still be found based on the signature itself and other attendant circumstances. *Id.* § 1-201:405. To the extent cases such as *Mayers v. McRimmon*, 140 N.C. 640, 53 S.E. 447 (1906), are superseded by the UCC in this context, they are overruled.

U.S. Bank was not the original lender with which Bass executed the Note. Therefore, each transfer required indorsement of the Note from one holder to the next. *See* N.C.G.S. § 25-3-201(b). Bass challenged the indorsement on the first transfer, which was evidenced by a stamp. While she acknowledges that a stamp *can* be a valid indorsement of a negotiable instrument, she asserts the stamp by Mortgage Lenders does not qualify as an indorsement under N.C.G.S. § 25-3-204(a). She relies on, *inter alia*, *Econo-Travel*, 301 N.C. at 204, 271 S.E.2d at 58, for the proposition that an indorsement must include some representation of an individual signature to be valid. Her reliance is misplaced, however, as *Econo-Travel* involved a promissory note lacking any indicia of indorsement to the plaintiff whatsoever. *Id.* at 203, 271 S.E.2d at 57. As such, *Econo-Travel* does not affect our analysis in the present case.

The contested stamp indicates on its face an intent to transfer the debt from Mortgage Lenders to Emax:

> Pay to the order of:
> Emax Financial Group, LLC
> without recourse
> By: Mortgage Lenders Network USA, Inc.

In addition, the stamp appears on the page of the Note where other, uncontested indorsements were placed. We also observe that the original Note was indeed transferred in accordance with the stamp's clear intent. The stamp evidences that it was "executed or adopted by the party with present intention to adopt or accept

the writing." N.C.G.S. § 25-1-201 cmt. 37. Under the broad definition of "signature" in N.C.G.S. § 25-1-201 and the accompanying official comment, the stamp by Mortgage Lenders constitutes a signature.

The stamp therefore was "an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances *unambiguously indicate* that the signature was made for a purpose other than indorsement." *Id.* § 25-3-204(a) (emphasis added). With no unambiguous evidence indicating the signature was made for any other purpose, the stamp was an indorsement that transferred the Note from Mortgage Lenders to Emax.

Bass contends that U.S. Bank bore the burden of proving the indorsement was valid and authorized. We disagree. "[T]he authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings." *Id.* § 25-3-308(a) (2011). The official UCC comment to section 25-3-308 explains that "the signature is presumed to be authentic and authorized . . . until some evidence is introduced which would support a finding that the signature is forged or unauthorized." *Id.* § 25-3-308 cmt. 1 (2011). Until the defendant produces such evidence, "the plaintiff is not required to prove that [the signature] is valid." *Id.* "The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence." *Id.*; *see* 6B *Anderson* § 3-308:9R; Hawkland §§ 3-308:2, 3-308:4.

The official comment explains the rationale behind the presumption in favor of the signature being authentic and authorized: "[I]n ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant." N.C.G.S. § 25-3-308 cmt. 1. Under the UCC's General Definitions and Principles of Interpretation, "[w]henever this Chapter creates a 'presumption' with respect to a fact, or provides that a fact is 'presumed,' the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence." *Id.* § 25-1-206 (2011); *see also* 1B *Anderson* §§ 1-206:4, 1-206:5.

In the trial court, Bass made the bare assertion, "We don't know who had authority a[t] Mortgage Lenders Network to authorize the sale of (unintelligible) to E-max." She asserted, "[Y]ou have to have something more than a mere stamp." Yet Bass offered no evidence to demonstrate the actual possibility of forgery or error. Her bare assertions, with no supporting evidence, did not amount to a "sufficient showing of the grounds for the denial." N.C.G.S. § 25-3-308 cmt. 1; *see also Dobson v. Substitute Tr. Servs., Inc.*, ___ N.C. App ___, ___, 711 S.E.2d 728, 731 (concluding the mortgagor's statement, "I cannot confirm the authenticity of the copy of the [n]ote produced by the Defendants," was insufficient to cast doubt upon the bank's status as holder of the promissory note), *aff'd per curiam*, 365 N.C. 304, 716 S.E.2d 849 (2011). Because Bass did not produce evidence to "support a finding that the signature [was] forged or unauthorized," the presumption in favor of the

signature prevails and U.S. Bank was "not required to prove that it [was] valid." N.C.G.S. § 25-3-308 cmt. 1. Accordingly, Bass failed to overcome the presumption in favor of the signature, and the trial court erred in concluding the Note was not properly indorsed and transferred to Emax.

Tonya Bass stopped making payments on her mortgage and the loan went into default. In an attempt to prevent foreclosure, Bass asserted that U.S. Bank—which possessed the original Note—was not the holder of the Note. The indorsements on the Note unambiguously indicated the intent to transfer the Note from each preceding lender and finally to U.S. Bank. We hold that U.S. Bank is the holder of the Note and reverse the decision of the Court of Appeals.

REVERSED.

Justice BEASLEY took no part in the consideration or decision of this case.