An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1163

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

IN THE MATTER OF THE FORECLOSURE
OF A DEED OF TRUST EXECUTED BY
MARY REED and RICHARD A. HOWSE
DATED JULY 16, 2008, AND RECORDED
ON JULY 17, 2008 IN BOOK 2924 AT
PAGE 1680, CATAWBA COUNTY
REGISTRY.  SUBSTITUTE TRUSTEE
SERVICES, INC., SUBSTITUTE TRUSTEE

Catawba County
No. 12 SP 582

Appeal by respondents from order entered 12 June 2013 by Judge Timothy S. Kincaid in Catawba County Superior Court. Heard in the Court of Appeals 17 February 2014.

>*HUTCHENS, SENTER, KELLAM & PETTIT, P.A., by Lacey M. Moore, for petitioner-appellee.*

>*THURMAN, WILSON, BOUTWELL & GALVIN, P.A., by James P. Galvin, for respondents-appellants.*

ELMORE, Judge.

Mary B. Reed and her husband, Richard A. Howse (respondents), appeal from the trial court's order authorizing Bank of America, N.A. (BANA) to proceed with foreclosure under a

power of sale on the deed of trust recorded in Book 2924 at Page 1680 in the Catawba County Register of Deeds.  We affirm.

## I. **Background**

On 16 July 2008, respondents executed a promissory note (the Note) for the property located at 6965 Navajo Trail, Sherrills Ford, NC 28673.  According to the terms of the Note, respondents promised to pay a principal amount of $376,000 plus interest in favor of BANA.  The Note was secured by a deed of trust executed by respondents on 17 July 2008.

On or about 1 November 2009, respondents ceased paying on the Note.  BANA sent a forty-five-day pre-foreclosure notice to respondents on 28 March 2012.  On 8 August 2012, BANA, through its substitute trustee, filed this foreclosure action after respondents failed to cure their default and resume making timely payments.

On 8 November 2012, the matter came on for hearing before the Catawba County Clerk of Court.  The Clerk entered an order authorizing BANA to foreclose on the subject property pursuant to N.C. Gen. Stat. § 45-21.16.  Respondents appealed.

On 10 June 2013, BANA filed an affidavit in support of the foreclosure executed by Duane Wells Thomas, Assistant Vice President for BANA (the Thomas affidavit).  Attached to the

affidavit was a copy of the Note, which did not contain an indorsement in blank. The matter was heard before Judge Timothy S. Kincaid during the 10 June 2013 civil session of Catawba County Superior Court. There is no transcript of this proceeding. However, the record reflects that Judge Kincaid considered the evidence presented by the parties, including any affidavits. Further, the record shows that Judge Kincaid was presented with the Note that contained a blank indorsement by BANA. On 12 June 2013, Judge Kincaid entered an order affirming the Clerk's order after finding that BANA satisfied N.C. Gen. Stat. § 45-21.16. Respondents filed timely notice of appeal to this Court on 1 July 2013.

## II. Analysis

### A. Note "Holder"

In a foreclosure by power of sale, the trial court shall enter an order permitting foreclosure upon finding: (i) valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, and (iv) notice to those entitled. N.C. Gen. Stat. § 45-21.16(d) (2013). Here, respondents challenge the first element of N.C. Gen. Stat. § 45-21.16(d) on the basis that BANA failed to produce competent evidence that it was the current holder of a

valid debt. "This issue is a question of law controlled by the UCC [Uniform Commercial Code], as adopted in Chapter 25 of the North Carolina General Statutes." *In re Bass,* 366 N.C. 464, 467, 738, S.E.2d 173, 175-76 (2013). We conclude that the trial court did not err.

When determining whether a party is the holder of a valid debt, we must find (i) competent evidence of a valid debt, and (ii) that the party seeking to foreclose is the current holder of the Note. *In re Adams,* 204 N.C. App. 318, 321, 693 S.E.2d 705, 709 (2010). As respondents concede that a valid debt exists, we need only discern whether petitioner is the current note holder. The term "holder" is defined as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." N.C. Gen. Stat. § 25-1-201(b)(21)(a) (2013). The term "bearer" is defined as "a person in control of a negotiable electronic document of title or a person in possession of a negotiable instrument, negotiable tangible document of title, or certificated security that is payable to bearer or indorsed in blank." N.C. Gen. Stat. § 25-1-201(b)(5) (2013). There is a strong presumption in favor of the legitimacy of indorsements to protect the transfer of negotiable instruments "by giving force

to the information presented on the face of the instrument." *Bass,* 366 N.C. at 468, 738 S.E.2d at 176.

On appeal, the crux of respondents' argument is that "[i]n light of conflicting evidence," BANA "failed to prove, by sufficient competent evidence, that it was the holder of the Note" because it presented two different versions of the Note to the trial court—the original Note bearing a blank indorsement (the original Note), and a copy (the copy), which was attached to the Thomas affidavit and was "without such an indorsement[.]" Further, respondents contend that "there was no evidence presented that the indorsement was authorized." As such, they argue that the blank indorsement on the Note subjects them to threats of multiple judgments.

We address each of respondents' arguments in turn. First, respondents cite no authority to support their position that the copy somehow nullified the indorsement in blank that appeared on the face of the original instrument. There is no "conflicting evidence"—BANA was the original lender with which respondents executed the Note, and they had discretion to determine whether and when to indorse the instrument. The fact that the copy did not bear a blank indorsement is inconsequential on these facts. Second, BANA was not charged with showing that the indorsement

was "authorized." Again, BANA was the original lender and thus could "authorize" an indorsement at their will. Third, respondents do not allege that the Note was transferred to a third party, and there is no evidence to suggest that a subsequent transfer occurred. Accordingly, respondents' argument as to the threat of multiple judgments is without merit.

Generally, whenever this Court has held that possession of the original promissory note is insufficient to show that the person in possession is the "holder," the note was either (i) not drawn, issued, or indorsed to the party, to bearer, or in blank, or (ii) the trial court neglected to make a finding in its order as to which party had possession of the note at the hearing. *See e.g.*, *In re David A. Simpson, P.C.*, 211 N.C. App. 483, 711 S.E.2d 165 (2011). Neither situation applies in the present case.

Here, the original Note was presented to the trial court for inspection. The Note was drawn to the order of BANA and contained an indorsement in blank by BANA. Respondents concede that the original Note was indorsed in blank. Further, given that BANA appeared at the hearing and was the original lender, an inference can be made that it was BANA who possessed the

original Note, making it the "bearer." Thus, BANA satisfied the definition of note "holder." *See* N.C. Gen. Stat. § 25-1-201(b)(21)(a).

Additionally, BANA offered evidence that it was the note holder through the Thomas affidavit. The trial court may exercise its sound discretion in receiving documents into evidence, and appellate review is limited to a determination of whether there was a clear abuse of discretion. *Id*. at 488, 711 S.E.2d at 170. Mr. Thomas testified that based on his personal knowledge: "BANA is the lender on the Note and the beneficiary of on the Deed of Trust[,]" and BANA "has possession of the promissory note[.]" Upon review, we see no reason to find that the trial court abused its discretion in admitting the Thomas affidavit. We hold that the trial court did not err in finding that BANA was the holder of a valid debt.

### B. **Description of Property**

Respondents argue that the legal description of the subject property in the deed of trust was insufficient to identify the real property it intended to encumber. We disagree.

Our Supreme Court has held that a deed of trust is "void unless it contains a description of the land sufficient to identify it or refers to something extrinsic by which the land

may be identified with certainty." *Overton v. Boyce*, 289 N.C. 291, 293, 221 S.E.2d 347, 349 (1976) (citation omitted). "A deed of trust containing a defective description of the subject property is a defective deed of trust and provides no notice, actual or constructive, under our recordation statutes." *Fifth Third Mortgage Co. v. Miller*, 202 N.C. App. 757, 761, 690 S.E.2d 7, 9-10, (2010), *disc. review denied*, 364 N.C. 601, 703 S.E.2d 445 (2010) (citation omitted).

> To resolve cases in which a deed contains an ambiguous description, the courts have formulated various rules of construction and techniques to locate the boundaries of deeds whose descriptions are less than ideal. The most common rule of construction used by the courts is to gather the intention of the parties from the four corners of the instrument. The courts seek to sustain a deed if possible on the assumption that the parties intended to convey and receive land or they would never have been involved in the first place.

*Chicago Title Ins. Co. v. Wetherington*, 127 N.C. App. 457, 462, 490 S.E.2d 593, 597 (1997) (internal quotations and citations omitted), *disc. review denied*, 347 N.C. 574, 498 S.E.2d 380 (1998); *see also Pearson v. Chambers*, 18 N.C. App. 403, 406, 197 S.E.2d 42, 44 (1973) ("In the interpretation of the provisions of a deed, the intention of the grantor must be gathered from the whole instrument and every part thereof given effect, unless

it contains conflicting provisions which are irreconcilable, or a provision which is contrary to public policy or runs counter to some rule of law." (quotation omitted)).

Respondents argue: "[I]t is "undisputed that the legal description in the deed of trust contains an error and identifies a property address that does not exist in Catawba County." However, they do not elaborate or allege a particular error in the description of the land.

In the deed of trust, the subject property's street address is written as "6965 Navahjo Trail" instead of "6965 Navajo Trail." Thus, the error is the misspelling of the word "Navajo." We cannot allow a scrivener's error of this kind to halt the foreclosure action. Here, the deed of trust includes the tax parcel ID 3697208028820, which is a reference to a Catawba County tax map that cites to a plat that is recorded at the Catawba County Register of Deeds at Plat Book 2924, Page 1680. The tax parcel ID corresponds to 6965 Navajo Trail. In addition, the second home rider describes the subject property as "BEING ALL OF LOT 15 BLOCK A OF LANDHARBOR DEVELOPMENT SUBDIVISION AS SHOWN ON MAP BOOK 14 AT PAGE 11 IN THE CATAWBA COUNTY PUBLIC REGISTRY." When viewed together, the tax parcel number and legal description contained in the second home rider

sufficiently identify the property encumbered by the deed of trust as 6965 Navajo Trail. The "four corners" test has been satisfied.

### III. <u>Conclusion</u>

In sum, the deed of trust contains a description of the land sufficient to identify the subject property. Further, the record contains competent evidence for us to conclude that BANA was the current holder of a valid debt. Accordingly, the trial court did not err in ordering BANA to proceed with the foreclosure pursuant to N.C. Gen. Stat. § 45-21.16 (2013). We affirm.

Affirmed.

Chief Judge MARTIN and Judge HUNTER, Robert N., concur.

Report per Rule 30(e).