EDWARD J. HARTY AND WIFE, MARGARET L. HARTY PLAINTIFFS v. PETER J. UNDERHILL OR FRANCES S. WHITE OR KIRSTEN K. GALLANT AS TRUSTEES FOR MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND COUNTRYWIDE HOME LOANS, INC., DEFENDANTS

No. COA10-583

(Filed 3 May 2011)

**1. Creditors and Debtors— foreclosure—challenge—dismissed without prejudice**

Plaintiffs' challenge to a foreclosure proceeding pursuant to N.C.G.S. § 45-21.34 was effectively dismissed without prejudice by virtue of a consent order. N.C.G.S. § 45-21.34 could not, therefore, be a basis for reversing the trial court's grant of summary judgment to defendants.

**2. Unfair Trade Practices— tortious interference with contract— summary judgment proper**

The trial court did not err by granting defendants' motion for summary judgment on the actions for unfair and deceptive trade practices and tortious interference with contract. There were no genuine issues of material fact on these claims and defendants were entitled to judgments as a matter of law.

Appeal by plaintiffs from order entered 26 October 2009 by Judge Joseph N. Crosswhite in Union County Superior Court. Heard in the Court of Appeals 13 October 2010.

*Clark, Griffin & McCollum, LLP, by Joe P. McCollum, Jr., for plaintiff-appellants.*

*Hunton & Williams, LLP, by A. Todd Brown and Brent A. Rosser, for defendant-appellees.*

CALABRIA, Judge.

Edward J. Harty and Margaret L. Harty (collectively, "plaintiffs") appeal the trial court's order granting Countrywide Home Loans, Inc.'s ("Countrywide"), Mortgage Electronic Registration Systems, Inc.'s ("MERS"), and Peter J. Underhill's, Frances S. White's, and Kirsten K. Gallant's (collectively, "the trustees"), as trustees for MERS (collectively, "defendants"), motion for summary judgment. We affirm.

HARTY v. UNDERHILL

[211 N.C. App. 546 (2011)]

## I. BACKGROUND

In August 2002, plaintiffs obtained a loan from Greenpoint Mortgage Funding, Inc. ("Greenpoint"), to finance the purchase of a home in Monroe, North Carolina. The loan was secured by a deed of trust. By December 2003, plaintiffs were in default. In order to suspend foreclosure proceedings, Greenpoint proposed a "Forbearance Agreement" ("the Forbearance Agreement" or "the contract") to allow plaintiffs to pay monthly payments toward their arrears.

Plaintiffs executed the Forbearance Agreement, and Greenpoint conditionally suspended foreclosure proceedings based upon plaintiffs' regular monthly payments and payments toward the arrears. Plaintiffs agreed to pay $5,500.00 by 11 December 2003 as well as payments of $1,237.94 per month from 1 January 2004 through 1 December 2004. Greenpoint reserved the right to reject any payment that was not received by the sixteenth day of the month in which the payment was due.

In paragraph 16 of the Forbearance Agreement, the "Time of the Essence" clause stated, "TIME IS OF THE ESSENCE WITH RESPECT TO ALL DATES SET FORTH HEREIN" ("the time-is-of-the-essence clause"). If plaintiffs failed to comply with the terms of the Forbearance Agreement, they would be in default. In paragraph 13, the "Waiver of Notice of Default" clause stated, "YOU HEREBY WAIVE ANY FURTHER NOTICE OF DEFAULT UNDER THE MORTGAGE OR THIS AGREEMENT THEREBY PERMITTING GREENPOINT TO RESUME ANY FORECLOSURE PROCEEDING UPON THE OCCURRENCE OF A DEFAULT WITHOUT NOTICE." This paragraph allowed Greenpoint to resume foreclosure proceedings without notice.

Approximately four months after plaintiffs executed the Forbearance Agreement with Greenpoint, plaintiffs' deed of trust was transferred from Greenpoint to Countrywide,[1] subject to the Forbearance Agreement. Terms of the Forbearance Agreement with Countrywide were exactly the same. Plaintiffs were still required to make their monthly payments by the sixteenth day of each month to comply with the time-is-of-the-essence clause.

According to Countrywide, plaintiffs' monthly payments during 2004 were late because Countrywide claimed they were not received until after the sixteenth of the month in which they were due. Even though plaintiffs disputed the timeliness of their monthly payments,

---

1. Countrywide serviced plaintiffs' loan on behalf of the noteholder, MERS.

Countrywide claimed plaintiffs were in default. Since the Forbearance Agreement permitted defendants to resume foreclosure proceedings without notice, defendants initiated foreclosure proceedings by reporting plaintiffs' default to the trustees. The trustees initiated foreclosure proceedings against plaintiffs in June 2005.

On 5 July 2007, the Clerk of Court of Union County ("clerk of court") entered an order ("the clerk's order") finding that the substitute trustee could proceed to foreclosure under the terms of plaintiffs' deed of trust. Plaintiffs continued to disagree with defendants regarding the timeliness of their payments and the amount of their debt. Specifically, plaintiffs disputed the actual amount of their debt owed on the note and deed of trust. Plaintiffs appealed the clerk's order to Union County Superior Court. On 13 July 2007, the clerk of court entered a stay order precluding foreclosure by defendants.

Although the stay order was still in effect, on 23 July 2007, plaintiffs filed a complaint against defendants in Union County Superior Court. Plaintiffs alleged defendants' actions constituted unfair and deceptive practices ("UDP") and tortious interference with contract, and asserted equitable challenges to the foreclosure under N.C. Gen. Stat. § 45-21.34. The complaint sought damages in excess of $10,000.00 and treble damages. Plaintiffs also sought preliminary and permanent injunctions against the trustees prohibiting them from foreclosing on plaintiffs' property. Pursuant to the allegations in plaintiffs' complaint, the trial court issued a temporary restraining order on 24 July 2007 forbidding defendants from foreclosing on plaintiffs' property.

On 4 October 2007, the parties entered into a consent order ("the consent order"). Under the terms of the consent order, the parties agreed that the temporary restraining order would be dissolved pending the resolution of plaintiffs' appeal of the clerk of court's foreclosure order. If plaintiffs were unsuccessful in their appeal, they would be permitted to re-seek entry of a preliminary injunction pursuant to N.C. Gen. Stat. § 45-21.34.

On 10 July 2009, defendants filed a motion for summary judgment, alleging, *inter alia*, that plaintiffs failed to forecast evidence necessary to establish claims for UDP, tortious interference with contract, and N.C. Gen. Stat. § 45-21.34. After reviewing the written material submitted by counsel and other relevant matters of record, and after hearing oral arguments, the trial court granted defendants' motion for summary judgment and dismissed all claims against defendants with prejudice on 26 October 2009. Plaintiffs appeal.

**HARTY v. UNDERHILL**

[211 N.C. App. 546 (2011)]

## II. FORECLOSURE PROCEEDINGS

[1] Our General Statutes govern the procedure for challenging a foreclosure by power of sale. A party may challenge a foreclosure proceeding under either N.C. Gen. Stat. § 45-21.16 (c)(7)(d) (2009) or N.C. Gen. Stat. § 45-21.34 (2009). Plaintiffs challenged the foreclosure proceeding under both statutes.

N.C. Gen. Stat. § 45-21.16 (c)(7)(d) governs direct challenges to the foreclosure proceeding before the clerk of court. When the trustees initiated foreclosure proceedings, the clerk of court was limited to making the four findings of fact specified in N.C. Gen. Stat. § 45-21.16 (c)(7)(d). *See Mosler ex rel. Simon v. Druid Hills,* —— N.C. App. ——, ——, 681 S.E.2d 456, 458 (2009). To authorize a foreclosure, the clerk was required to find the existence of: "(i) valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, and (iv) notice to those entitled to notice." N.C. Gen. Stat. § 45-21.16 (c)(7)(d) (2009). Since plaintiffs disputed the existence of a valid debt, one of the required four findings of fact, the superior court could consider plaintiffs' appeal of the clerk's Order of Foreclosure *de novo. Mosler,* —— N.C. App. at ——, 681 S.E.2d at 458. However, equitable defenses, such as the acceptance of late payments, may not be raised in a foreclosure hearing pursuant to N.C. Gen. Stat. § 45-21.16.

In an action to enjoin a foreclosure sale, equitable defenses must be asserted under N.C. Gen. Stat. § 45-21.34. *In re Foreclosure of Fortescue,* 75 N.C. App. 127, 330 S.E.2d 219 (1985). Therefore, since plaintiffs' complaint alleged, *inter alia,* that defendants should be enjoined from foreclosing on the property because they waived any irregularities in plaintiffs' payments, plaintiffs also challenged the foreclosure proceeding under N.C. Gen. Stat. § 45-21.34.

Any owner of real estate, or other person, firm or corporation having a legal or equitable interest therein, may apply to a judge of the superior court, prior to the time that the rights of the parties to the sale or resale becoming fixed pursuant to G.S. 45-21.29A to enjoin such sale, upon the ground that the amount bid or price offered therefor is inadequate and inequitable and will result in irreparable damage to the owner or other interested person, or upon any other legal or equitable ground which the court may deem sufficient: Provided, that the court or judge enjoining such sale, whether by a temporary restraining order or injunction to the hearing, shall, as a condition precedent, require of the plain-

tiff or applicant such bond or deposit as may be necessary to indemnify and save harmless the mortgagee, trustee, cestui que trust, or other person enjoined and affected thereby against costs, depreciation, interest and other damages, if any, which may result from the granting of such order or injunction: Provided further, that in other respects the procedure shall be as is now prescribed by law in cases of injunction and receivership, with the right of appeal to the appellate division from any such order or injunction.

N.C. Gen. Stat. § 45-21.34 (2009).

Plaintiffs rely on *Meehan v. Cable*, 127 N.C. App. 336, 489 S.E.2d 440 (1997), as the authority for their N.C. Gen. Stat. § 45-21.34 cause of action for an injunction because the statute includes the words, "any other legal or equitable ground which the court may deem sufficient[.]" In *Meehan*, the plaintiff filed a complaint under N.C. Gen. Stat. § 45-21.34, arguing that the foreclosure on his property should be enjoined because he was not in default. *Id.* at 339, 489 S.E.2d at 443. Our Court held that the plaintiff's claim was "within the jurisdiction of the superior court in an action pursuant to [N.C. Gen. Stat. §] 45-21.34." *Id.*

Plaintiffs correctly rely on *Meehan* for their equitable defense; however, the same words in N.C. Gen. Stat. § 45-21.34 do not entitle plaintiffs to nominal damages. Plaintiffs cite *Sloop v. London*, 27 N.C. App. 516, 219 S.E.2d 502 (1975) to support their argument that a plaintiff is entitled to nominal damages in a wrongful foreclosure action. However, the plaintiff in *Sloop* filed an action against the trustee for wrongful foreclosure based on breach of fiduciary duty, which did not involve N.C. Gen. Stat. § 45-21.34. *Id.* at 519-20, 219 S.E.2d at 505.

In the instant case, plaintiffs' complaint sought an injunction pursuant to N.C. Gen. Stat. § 45-21.34, and the trial court issued a temporary restraining order in accordance with that statute. The consent order subsequently disposed of that claim. Although the consent order dated 4 October 2007 dissolved the temporary restraining order, it further provided that the parties agreed:

in the event of an adverse ruling as to Plaintiffs in the pending foreclosure appeal, Plaintiffs shall have thirty (30) days from the date of the entry of an order denying the appeal and affirming Defendants' right to proceed to foreclosure to move the Court for the issuance of the preliminary injunction originally sought in this action.

While this order could be read as allowing plaintiffs to file a new motion for a preliminary injunction in this action, as opposed to filing a new action, it does not appear that such a construction was the intent of the parties or the court. The trial court, in granting defendants' motion for summary judgment, understood that its order completely disposed of plaintiffs' case. Furthermore, plaintiffs' Statement of the Grounds for Appellate Review states that the "summary judgment order, dismissing all the plaintiff[s'] claims, is a final judgment . . . ." Therefore, plaintiffs' claim *in the instant case*, pursuant to N.C. Gen. Stat. § 45-21.34, was effectively dismissed without prejudice by virtue of the consent order. N.C. Gen. Stat. § 45-21.34 cannot, therefore, be a basis for reversing the trial court's grant of summary judgment to defendants.

### III. SUMMARY JUDGMENT

[2] Plaintiffs argue that the trial court erred by granting defendants' motion for summary judgment on the actions for UDP and tortious interference with contract. We disagree.

### A. Standard of Review

"This Court will uphold a trial court's grant of summary judgment 'if considering the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, there is no genuine issue of material fact and a party is entitled to judgment as a matter of law.' " *Diggs v. Novant Health, Inc.*, 177 N.C. App. 290, 294, 628 S.E.2d 851, 854 (2006) (quoting *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 393-94, 499 S.E.2d 772, 775 (1998)). The moving parties—in this case, defendants—"bear the initial burden of showing the lack of any triable issue of fact and the propriety of summary judgment." *Id.* at 294, 628 S.E.2d at 854-55 (citing *Moore*, 129 N.C. App. at 394, 499 S.E.2d at 775).

"Once the moving party has met its initial burden, in order to survive summary judgment, the nonmoving party—here, plaintiff—must produce 'a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a prima facie case at trial.' " *Id.* at 294, 628 S.E.2d at 855 (quoting *Moore*, 129 N.C. App. at 394, 499 S.E.2d at 775 (internal quotation and citation omitted)). "On appeal, we view the evidence in the light most favorable to the nonmoving party and decide whether summary judgment was appropriate under a *de novo* standard of review." *Id.*

Initially, we note that plaintiffs focus their arguments on Countrywide and have excluded the trustees in their argument claim-

ing that the trial court erred by granting summary judgment. Since plaintiffs do not argue that the trial court's grant of summary judgment to the trustees was improper, plaintiffs have abandoned this argument. N.C. R. App. P. 28(b) (2009). Therefore, the trial court correctly granted summary judgment to the trustees. All future references to defendants will exclude the trustees.

### B. Unfair or Deceptive Practices

> The elements of a claim for unfair or deceptive . . . practices in violation of N.C. Gen. Stat. § 75-1.1 (2003) are: (1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately causes ·actual injury to the plaintiff or to his business. To prevail on a Chapter 75 claim, a plaintiff need not show fraud, bad faith, or actual deception. Instead, it is sufficient if a plaintiff shows that a defendant's acts possessed the tendency or capacity to mislead or created the likelihood of deception. Although it is a question of fact whether the defendant performed the alleged acts, it is a question of law whether those facts constitute an unfair or deceptive . . . practice.

*RD&J Props. v. Lauralea-Dilton Enters., LLC,* 165 N.C. App. 737, 748, 600 S.E.2d 492, 500-01 (2004) (internal citations omitted). "Under [N.C. Gen. Stat. §] 75-1.1, an act or practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act or practice is deceptive if it has the capacity or tendency to deceive." *Ace Chemical Corp. v. DSI Transports, Inc.,* 115 N.C. App. 237, 247, 446 S.E.2d 100, 106 (1994) (internal citations and quotations omitted). "Under section 75-1.1, a mere breach of contract does not constitute an unfair or deceptive act. Egregious or aggravating circumstances must be alleged before the provisions of the Act may take effect." *Becker v. Graber Builders, Inc.,* 149 N.C. App. 787, 794, 561 S.E.2d 905, 910-11 (2002) (citing *Branch Banking and Trust Co. v. Thompson,* 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992), and *Bartolomeo v. S.B. Thomas, Inc.,* 889 F.2d 530, 535 (4th Cir. 1989)). *See also Watson Elec. Constr. Co. v. Summit Cos.,* 160 N.C. App. 647, 657, 587 S.E.2d 87, 95 (2003) ("[I]t is well recognized . . . that actions for unfair or deceptive . . . practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [N.C. Gen. Stat.] § 75-1.1.") (citation and quotation omitted)).

As the moving party, defendants had the burden of showing the lack of any triable issues of fact. In the instant case, the Forbearance Agreement conditionally suspended foreclosure proceedings as long as plaintiffs performed by making timely monthly payments "on the first day of each month." It further provided that payments could be rejected and Greenpoint reserved the right to "declare a default" under the Forbearance Agreement if payments were not received by the sixteenth day of the month in which a payment was due, or the payment was less than the full amount required under the Forbearance Agreement. According to defendants' evidence, plaintiffs were put on notice at the time of the execution of the contract that failure to comply with the dates could lead to an automatic initiation of foreclosure proceedings. There is no dispute that plaintiffs' payments were repeatedly received after the sixteenth day of the month in which they were due, at least one of the monthly payments was for less than the amount due, and the payment due in December 2004 was not made until 25 February 2005.

Plaintiffs argue that defendants waived the time-is-of-the-essence clause and any irregularities in plaintiffs' payments by accepting payments after the sixteenth day of the month in which the payments were due. More specifically, plaintiffs argue that since substantial evidence was presented regarding defendants' repeated acceptance of late payments, a jury could find "defendants had waived their right to accelerate plaintiff[s'] debt with regard to payments due in the past, and waived their right to accelerate the debt based on future delinquent payments without first notifying plaintiffs that prompt payment would be expected in the future."

If plaintiffs had not signed the Forbearance Agreement, which included the "Waiver of Notice of Default" clause, they may have had a valid argument that defendants had waived the time-is-of-the-essence clause by making statements and taking actions manifesting an intent that the performance required by the dates in the contract should occur at some unspecified later date. *Phoenix Ltd. P'ship of Raleigh v. Simpson*, —— N.C. App. ——, ——, 688 S.E.2d 717, 723 (2009). However, the contract in the instant case provided a waiver of notice of default and provided that foreclosure proceedings could resume upon the occurrence of default without any additional notice.

Moreover, plaintiffs' forecasted evidence, taken in the light most favorable to defendants, merely stated facts that indicate that plaintiffs disagree with defendants over the terms of their payments, a

basic breach of contract claim. As previously noted, a breach of contract claim cannot, standing alone, form the basis of an UDP claim. *Watson Elec.*, 160 N.C. App. at 657, 587 S.E.2d 95. Plaintiffs did not forecast evidence that Countrywide's actions were immoral, unethical, oppressive, unscrupulous, or substantially injurious to plaintiffs. Plaintiffs have also failed to forecast evidence that defendants' actions had the capacity or tendency to deceive plaintiffs.

Additionally, even assuming *arguendo* that defendants failed to strictly follow the terms of their contract by proceeding to foreclosure and breached their contract, plaintiffs have not shown "egregious or aggravating circumstances" attending the alleged breach of contract to recover under N.C. Gen. Stat. § 75-1.1 (2009). In the instant case, defendants offered plaintiffs a second opportunity to avoid foreclosure, delayed the initiation of foreclosure proceedings, and paid plaintiffs' taxes and insurance beginning in April 2005. These facts, without more, are insufficient to conclude that defendants' conduct was egregious or the circumstances were aggravating. Therefore, there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law on this claim. The trial court properly granted defendants' motion for summary judgment as to plaintiffs' claim for UDP. Plaintiffs' issue on appeal is overruled.

## C. Tortious Interference With Contract

> The elements of tortious interference with contract are as follows: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff."

*Beck v. City of Durham*, 154 N.C. App. 221, 232, 573 S.E.2d 183, 191 (2002) (quoting *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)). A plaintiff cannot maintain an action for tortious interference with a contract against a party to that contract. *Wagoner v. Elkin City Schools' Bd. of Education*, 113 N.C. App. 579, 587, 440 S.E.2d 119, 124 (1994).

In the instant case, plaintiffs' claim fails at the outset because there are no allegations that defendants interfered with the Forbearance Agreement between plaintiffs and Greenpoint. Countrywide was the assignee to the Forbearance Agreement plain-

tiffs initially executed with Greenpoint and serviced plaintiffs' loan on behalf of the noteholder MERS. *See Smith v. Brittain*, 38 N.C. 347, 354, 1844 WL 1098, at *5, 1844 N.C. LEXIS 157, at **13 (1844) ("In equity the assignee stands absolutely in the place of his assignor, and it is the same, as if the contract had been originally made with the assignee, upon precisely the same terms as with the original parties."). Defendants could not have induced Greenpoint to breach a contract that Greenpoint had already assigned because Greenpoint was no longer a party to that contract. Furthermore, to the extent plaintiffs allege that defendants took plaintiffs' deed of trust subject to the Forbearance Agreement, plaintiffs cannot maintain an action for interference with a contract against a party to that contract. *Wagoner*, 113 N.C. App. at 587, 440 S.E.2d at 124.

Since plaintiffs did not forecast evidence to show that defendants induced Greenpoint to breach the agreement, there were no genuine issues of material fact on this claim and defendants were entitled to judgment as a matter of law. The trial court properly granted defendants' motion for summary judgment as to plaintiffs' claim for tortious interference with contract. Plaintiffs' issue on appeal is overruled.

## IV. CONCLUSION

The trial court properly granted defendants' motion for summary judgment. Plaintiffs' claims for UDP and tortious interference with contract were properly dismissed with prejudice by the trial court. Plaintiffs' claim pursuant to N.C. Gen. Stat. § 45-21.34 was effectively dismissed by virtue of the consent order. The trial court's order is affirmed.

Affirmed.

Judges HUNTER, Robert C., and GEER concur.