An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. 13-1453
NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

In the Matter of the Foreclosure
of The Deed of Trust from Edward
J. Harty and Margaret L. Harty,

               Grantors,      Union County
                                  No. 12 SP 1003
Recorded in Book 1890, Page 170
Of the Union County Public
Registry, Trustee Services of
Carolina, LLC, Substitute Trustee.


Appeal by respondents from order entered 12 June 2013 by Judge W. David Lee in Union County Superior Court. Heard in the Court of Appeals 5 May 2014.

> *K&L Gates LLP, by John H. Capitano, for petitioner-appellee.*
>
> *Clark, Giffin & McCollum, by Joe P. McCollum, Jr., for respondent-appellants.*


STEELMAN, Judge.

The trial court's finding that respondents had defaulted on their loan was supported by competent evidence. The record reflects the appointment of a substitute trustee, the trial court's order identifies the holder of the note, and respondents failed to preserve for appellate review the court's admission of

evidence of a power of attorney held by New York Mellon. The trial court did not err by allowing the foreclosure to proceed.

## I. Factual and Procedural History

On 13 August 2002 Edward J. Harty and his wife, Margaret L. Harty, (respondents) executed a note and deed of trust in favor of GreenPoint Mortgage in the amount of $177,800.00. This is the second appeal to this Court arising from respondents' failure to make payments due under the note and deed of trust. *See Harty v. Underhill*, 211 N.C. App. 546, 547, 710 S.E.2d 327, 329 (2011) (*Harty I*). Respondents became delinquent on their loan payments in 2003, and on 1 December 2003 respondents and GreenPoint entered into a forbearance agreement which provided in relevant part that:

> The above-referenced mortgage is in default due to the non-payment of the required monthly mortgage payments. The total mortgage arrears, as calculated through December 11, 2003, are $8,617.16.
>
> GreenPoint is willing to extend to you the opportunity to repay the mortgage arrears in accordance with the terms and conditions set forth herein. It is expressly understood that in consideration of GreenPoint extending any forbearance for a period of time, it is necessary that you comply in all respects with the following terms and conditions:
>
> . . .

4. Completion of Agreement. Assuming all payments required to be tendered herein are made on time and no other charges are incurred, subject to this agreement, the mortgage loan will be brought current and any foreclosure action commenced against you will be discontinued.

5. Schedule of Payments. GreenPoint will provide you with a Schedule of payments[.] . . . It is your obligation to tender timely and full payment in accordance with the terms and conditions of this Agreement. . . .

6. Manner of Payment. ALL PAYMENTS REQUIRED TO BE TENDERED UNDER THE TERMS AND CONDITIONS OF THIS AGREEMENT MUST BE IN THE FORM OF CERTIFIED OR BANK CHECKS OR MONEY ORDERS ONLY. PERSONAL CHECKS, CORPORATE CHECKS AND CASH WILL NOT BE ACCEPTED.

7. Effect of Default under Agreement. IF YOU DEFAULT UNDER THE TERMS OF THIS AGREEMENT, THIS AGREEMENT WILL BE TERMINATED WITHOUT NOTICE TO YOU AND ANY FORECLOSURE ACTION THAT MAY HAVE BEEN COMMENCED AGAINST YOU WILL RESUME. ANY PAYMENT MADE AFTER DEFAULT WILL BE RETURNED TO YOU.

8. Due Dates for Monthly Payments. ALL MONTHLY PAYMENTS REQUIRED UNDER THIS AGREEMENT ARE DUE ON THE FIRST DAY OF EACH MONTH. GREENPOINT RESERVES THE RIGHT TO REJECT ANY PAYMENT AND DECLARE A DEFAULT UNDER THIS AGREEMENT IF (1) PAYMENT IS NOT RECEIVED BY GREENPOINT BY THE 16TH DAY OF THE MONTH WHEN THE PAYMENT IS DUE OR (2) THE PAYMENT IS LESS THAN THE FULL AMOUNT OF THE PAYMENT REQUIRED UNDER THIS AGREEMENT.

. . .

10. Changes to Monthly Mortgage Payment. Your monthly mortgage payment may change during the term of this Agreement based on a

number of factors[.] . . . You hereby agree to make such adjustments in the payments when notified . . . or be deemed in default hereof, even if such notification of an adjustment occurs after the last payment . . . under this Agreement. <u>You must contact GreenPoint prior to the last payment under this Agreement to inquire if any additional amounts must be tendered for yearly adjustment of the mortgage payments</u>.

. . .

12. <u>Effect of Forbearance on existing Foreclosure Action</u>. THIS AGREEMENT DOES NOT DISCONTINUE ANY EXISTING FORECLOSURE PROCEEDING THAT HAS BEEN COMMENCED WITH RESPECT TO THIS MORTGAGE. THIS AGREEMENT MERELY SUSPENDS SUCH PROCEEDING AND YOUR FAILURE TO COMPLY WITH THIS AGREEMENT WILL RESULT IN THE FORECLOSURE PROCEEDING BEING RESUMED FROM THE APPROPRIATE STAGE. . . .

13. <u>Waiver of Notice of Default</u>. YOU HEREBY WAIVE ANY FURTHER NOTICE OF DEFAULT UNDER THE MORTGAGE OR THIS AGREEMENT THEREBY PERMITTING GREENPOINT TO RESUME ANY FORECLOSURE PROCEEDING UPON THE OCCURRENCE OF A DEFAULT WITHOUT NOTICE.

. . .

16. <u>Time of the Essence</u>. TIME IS OF THE ESSENCE WITH RESPECT TO ALL DATES SET FORTH HEREIN.

(all caps and underlining in original). "Plaintiffs[1] executed the Forbearance Agreement, and Greenpoint conditionally suspended foreclosure proceedings based upon plaintiffs' regular monthly

---

[1] Because *Harty I* arose in the context of a lawsuit seeking to enjoin foreclosure, rather than a foreclosure proceeding, respondents and petitioner are referred to in *Harty I* as plaintiffs and defendant respectively.

payments and payments toward the arrears. . . . Approximately four months after plaintiffs executed the Forbearance Agreement with Greenpoint, plaintiffs' deed of trust was transferred from Greenpoint to Countrywide, subject to the Forbearance Agreement. . . . Plaintiffs were still required to make their monthly payments by the sixteenth day of each month to comply with the time-is-of-the-essence clause." *Harty I,* 211 N.C. App. at 547, 710 S.E.2d at 329.

It is undisputed that respondents' December 2004 payment was not made until February 2005, placing respondents in default under the terms of the Forbearance Agreement. In January 2005, Countrywide notified respondents that the mortgage was in default. "Since the Forbearance Agreement permitted defendants to resume foreclosure proceedings without notice, defendants initiated foreclosure proceedings by reporting plaintiffs' default to the trustees. The trustees initiated foreclosure proceedings against plaintiffs in June 2005." *Harty I* at 548, 710 S.E.2d at 329. "On 5 July 2007, the Clerk of Court of Union County" entered an order "finding that the substitute trustee could proceed to foreclosure under the terms of plaintiffs' deed of trust." *Id.*

Respondents appealed the Clerk's order to Superior Court; the record contains no indication that this appeal was pursued.

Countrywide Home Loans became part of Bank of America pursuant to a merger in July 2007. "[O]n 23 July 2007, plaintiffs filed a complaint against defendants in Union County Superior Court. Plaintiffs alleged defendants' actions constituted unfair and deceptive practices ('UDP') and tortious interference with contract, and asserted equitable challenges to the foreclosure under N.C. Gen. Stat. § 45-21.34." "On 10 July 2009, defendants filed a motion for summary judgment, alleging, *inter alia*, that plaintiffs failed to forecast evidence necessary to establish claims for UDP, tortious interference with contract, and N.C. Gen. Stat. § 45-21.34. . . . [T]he trial court granted defendants' motion for summary judgment and dismissed all claims against defendants with prejudice on 26 October 2009." *Harty I* at 548, 710 S.E.2d at 330.

Respondents appealed to this Court, which affirmed the trial court's orders in *Harty I*, filed 3 May 2011. On 25 November 2011, Bank of America sent respondents a Notice of Intent to Accelerate, informing them that their loan was in serious default for failure to make payments, that a payment of $88,787.23 was required to bring the loan current, and that if the default were not cured by 25 December 2011, "the mortgage payments will be accelerated with the full amount . . . due and payable in full, and foreclosure proceedings will be initiated

at that time." Respondents had made no payments since February 2005, and they failed to make any payments after receiving the Notice of Intent to Accelerate.

On 30 November 2011 Bank of America assigned the note and deed of trust to Bank of New York Mellon as trustee. Bank of America held a power of attorney authorizing it to act on behalf of Bank of New York Mellon. On 9 January 2012 Bank of America sent respondents a notice of the updated payoff amount, and provided respondents with information about means by which they might avoid foreclosure, including loan modification or the involvement of an agency approved by the U.S. Department of Housing and Urban Development. The record contains no evidence that respondents sought to avail themselves of any of these mechanisms to avoid foreclosure. On 29 June 2012 Trustee Services of Carolina, LLC, (petitioner) was appointed as substitute trustee. On 10 July 2012 the trustee filed a notice of foreclosure hearing. After conducting a hearing, the Union County Clerk of Court entered an order on 25 March 2013 dismissing the petition for foreclosure. Petitioner appealed to Superior Court and the trial court conducted a hearing on 20 May 2013. On 12 June 2013 the trial judge entered an order authorizing petitioner to proceed with the foreclosure sale.

Respondents appeal.

## II. Standard of Review

"Under N.C.G.S. § 45-21.16(d), four elements must be established before the clerk of superior court authorizes a mortgagee or trustee to proceed with foreclosure by power of sale: '(i) [a] valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, [and] (iv) notice to those entitled to such[.]' N.C.G.S. § 45-21.16(d) (2011)." *In re Foreclosure of Bass*, 366 N.C. 464, 467, 738 S.E.2d 173, 175 (2013).

> The clerk's findings are appealable to the superior court for a hearing *de novo*; however, the superior court's authority is similarly limited to determining whether the criteria enumerated in N.C. Gen. Stat. § 45—21.16(d) have been satisfied. The superior court "has no equitable jurisdiction and cannot enjoin foreclosure upon any ground other than the ones stated in [N.C. Gen. Stat. § ] 45—21.16."

*In re Foreclosure of a [Deed of] Trust by Raynor*, __ N.C. App. __, __, 748 S.E.2d 579, 583 (2013) (citing *Mosler v. Druid Hills Land Co.*, 199 N.C. App. 293, 295—96, 681 S.E.2d 456, 458 (2009), and quoting *In re Foreclosure of a Deed of Trust,* 55 N.C. App. 68, 71—72, 284 S.E.2d 553, 555 (1981)).

"'The applicable standard of review on appeal where, as here, the trial court sits without a jury, is whether competent evidence exists to support the trial court's findings of fact and whether the conclusions reached were proper in light of the

findings. Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding.' 'Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal.'" *In re Manning*, __ N.C. App. __, __, 747 S.E.2d 286, 289 (2013) (quoting *In re Foreclosure of Adams*, 204 N.C. App. 318, 320-21, 693 S.E.2d 705, 708 (2010) (internal quotation omitted), and *Bass*, 366 N.C. at 467, 738 S.E.2d at 175 (internal citation omitted). In addition:

> A trial judge "passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom." . . . "The trial court must itself determine what pertinent facts are actually established by the evidence before it, and it is not for an appellate court to determine *de novo* the weight and credibility to be given to evidence disclosed by the record on appeal."

*Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994) (quoting *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968), and *Coble v. Coble*, 300 N.C. 708, 712-13, 268 S.E.2d 185, 189 (1980)).

## III. Finding of Default

Respondents argue first that the trial court erred in finding that "the deed of trust was in default at the time of the notice of foreclosure" on the grounds that this finding "is unsupported by the evidence." Respondents contend that there was "insufficient evidence to support" the trial court's finding

that they had failed to make payments in accordance with the terms of the note. We disagree.

Respondents assert that in its January 2005 notice of default, petitioner failed to properly credit them for certain payments made in the fall of 2004. However, respondents do not challenge the undisputed evidence establishing that:

> 1. On 13 August 2002 respondents obtained a loan from GreenPoint Mortgage Funding, Inc., in the amount of $177,800.00. The terms of this loan required respondents to make monthly mortgage payments.
>
> 2. Respondents defaulted on their loan payments, and on 1 December 2003 GreenPoint and respondents executed a forebearance agreement stating terms under which respondents might bring their loan current.
>
> 3. The forbearance agreement stated that it was "expressly understood" that, in order to remedy the default, respondents were required to "comply in all respects" with the terms and conditions of the forbearance agreement. These terms included in relevant part requirements that:
> (a) payments were due no later than the 16th of each month;
> (b) time was of the essence regarding the payment dates;
> (c) payments would only be accepted in the form of certified or bank checks or money orders; cash and personal checks would not be accepted;
> (d) petitioner reserved "the right to reject" any payments that were late or incomplete, and;
> (e) respondents' failure to comply with the terms of the forbearance agreement would result in termination of the agreement without notice to respondents.

4. During the time period covered by the forbearance agreement respondents (a) made payments by personal check; (b) made at least one payment that was not for the full amount due; and (c) failed to make a payment for December 2004 until February 2005.

This undisputed evidence establishes as a matter of law that by January 2005 respondents were in default under the terms of the forbearance agreement. Moreover, it is equally undisputed that respondents have made no payments on their mortgage loan since February 2005, despite being notified repeatedly that their loan was in default. In addition, respondents admit that they failed to make any payments in response to the November 2011 Notice of Intent to Accelerate or the January 2012 notice from petitioner. Respondents do not dispute the validity of the original loan, or the fact that at the time the trial court entered its order allowing foreclosure to proceed, respondents had made no payments towards their mortgage loan for more than eight years. We hold that this evidence amply supported the trial court's finding on the issue of default.

In urging us to reach a contrary conclusion, respondents first contend that the trial court should have made findings concerning the forbearance agreement. Appellants assert that the "forbearance agreement provided that if the payments were made, then the mortgage loan would be brought current." Respondents

fail to acknowledge that the forbearance agreement expressly provides that (1) time is of the essence with regard to dates set out in the agreement; (2) payments are due on the first of each month and no later than the 16th of the month; (3) default will result in the termination of the agreement, and; (4) respondents waive any further notice of default. It is undisputed that the payment due on 1 December 2004 was not made until February 2005, resulting in default under the express terms of the agreement.

Respondents also argue that the fact that petitioner did not return the payment submitted in February 2005 "would seem to indicate that the bank at that time did not consider them to be in default," an argument rejected by this Court in *Harty I*:

> According to defendants' evidence, plaintiffs were put on notice at the time of the execution of the contract that failure to comply with the dates could lead to an automatic initiation of foreclosure proceedings. There is no dispute that plaintiffs' payments were repeatedly received after the sixteenth day of the month in which they were due, at least one of the monthly payments was for less than the amount due, and the payment due in December 2004 was not made until 25 February 2005. Plaintiffs argue that defendants waived the time-is-of-the-essence clause and any irregularities in plaintiffs' payments by accepting payments after the sixteenth day of the month in which the payments were due. . . . However, the contract in the instant case provided a waiver of notice of default and provided that foreclosure

> proceedings could resume upon the occurrence
> of default without any additional notice.

*Harty I* at 553, 710 S.E.2d at 332-33.

Respondents also assert that a statement by petitioner's counsel during the hearing, indicating that petitioner was foreclosing on the principal amount of the loan and did not consider respondents to be in default with regards to interest payments, establishes that they were not in default at the time petitioner first initiated foreclosure proceedings. It is axiomatic that "[s]tatements by an attorney are not considered evidence." *In re D.L.*, *A. L.,* 166 N.C. App. 574, 582, 603 S.E.2d 376, 382 (2004) (citing *State v. Haislip*, 79 N.C. App. 656, 658, 339 S.E.2d 832, 834 (1986)).

Respondents also place emphasis on their contention that they had a dispute with petitioner in 2005 concerning the basis and amount of fees imposed by petitioner in addition to the payments made under the Forbearance Agreement. Respondents cite no authority for the proposition that a 2005 dispute over late fees or other charges excused them from making any payments for the following 8 years. Moreover, regardless of the status of respondents' loan in early 2005, it is undisputed that they have made no payments since then and failed to cure the default when notified in November 2011. We hold that the trial court did not

err by finding that respondents defaulted on their mortgage obligation.

### IV. Appointment of Substitute Trustee

Respondents argue next that the trial court erred by finding that the substitute trustee had been "duly designated and empowered by the terms of the deed of trust to foreclose." Respondents contend that "[n]owhere in the record is there any record or indication that the holder has appointed Trustee Services of Carolina, LLC as substitute Trustee in this matter." We disagree.

Respondents' argument, that there is no evidence in the record establishing the appointment of the substitute trustee, differs from the argument that they presented to the trial court during the hearing on this matter:

> [RESPONDENTS' COUNSEL]: Judge, the first question I have is whether or not the Substitute Trustee in this matter has been duly appointed. And I have a certified copy of the appointment of Substitute Trustee. . . . And the question I raise is on the notarization line, Bank of New York Mellon through their attorney-in-fact, Bank of America. It has the name of Joshua Temple, Assistant Vice President apparently out of Dallas, Texas. But there is nothing to show – there's no document that I have seen that has been – where we have been furnished a Statement of Attorney-in-Fact of where this is recorded in any way to make this a valid appointment. We don't have an Attorney-in-Fact document. (emphasis added).

. . .

THE COURT: Mr. McCollum, I'm not sure I'm following what your concern is.

[RESPONDENTS' COUNSEL]: My concern is that nothing is in the record to show at this point that there is an Attorney-in-Fact relationship; he signs as Attorney-in-Fact. But we don't have either the Power of Attorney or anything - normally what I have observed is, it's recorded in somewhere in the book and page records. But we have no evidence that they are in fact, uh, Attorney-in-Fact or this person was --

. . .

THE COURT: You're not questioning the authority of Joshua Temple to act on behalf of Bank of America. You're questioning the –

[RESPONDENTS' COUNSEL]: Well, there's nothing to show that he can.

THE COURT: Okay. The underlying instrument that would authorize him to act?

[RESPONDENTS' COUNSEL]: That's correct.

. . .

THE COURT: I'm not sure – I think if I understand your argument, Mr. McCollum, the declaration of someone that they are an agent for someone else doesn't make them the agent.

[RESPONDENTS' COUNSEL]: No, sir.

The transcript makes it clear that, at the trial level, respondents challenged only the documentation establishing that the person purporting to act on behalf of the holder of the note

had been properly appointed. Respondents did not dispute that the substitute trustee had been appointed and, in fact, provided the trial court with the document setting out the appointment of a substitute trustee. "'[Respondent] may not swap horses after trial in order to obtain a thoroughbred upon appeal.'" *State v. Bell*, 359 N.C. 1, 31, 603 S.E.2d 93, 114 (2004) (quoting *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988)). Respondents have not preserved this issue for review. *Bell*, 359 N.C. at 31, 603 S.E.2d at 114 ("Defendant did not object to the sufficiency of the evidence to support the pecuniary gain aggravating circumstance at trial and has not preserved this issue for appellate review. N.C. R. App. P. 10(b)(1).").

Moreover, contrary to respondents' contention, the record <u>does</u> contain the recorded appointment of substitute trustee (Book 5766 at page 400 of the Union County Public Registry), which was submitted to this Court under Rule 9(b)(5) of the Rules of Appellate Procedure. This argument lacks merit.

<u>V. Finding Concerning Holder of Note</u>

Respondents argue next that the trial court "did not find as a fact that the Bank of New York Mellon is the holder of the note and deed of trust." Respondents do not dispute that the bank is the holder, but argue only that the court failed to make a finding to this effect. We do not agree.

In its order, the trial court found that respondents had "executed to the order of GreenPoint Mortgage Funding, Inc. that certain promissory note dated August 13, 2002 in the original principal amount of $177,800.00, evidencing a valid debt of which <u>the party seeking to foreclose</u> is the current holder." (emphasis added). It is undisputed that "the party seeking to foreclose" is The Bank of New York Mellon. We hold that the trial court adequately identified the holder of the note:

> Respondents' final argument is that the order of the trial court "does not comply with the requirements of the foreclosure statute." Respondents argue that there was not a proper finding that Robert Carpenter and Edith Carpenter were holders of a valid debt. In his order, the judge referred to Robert Carpenter and Edith Carpenter as holders when he stated that "the holders of the Note" presented evidence of ownership. . . . In any event, the intent of the trial court is plain, and we will not reverse the trial court for harmless error.

*In re Cooke*, 37 N.C. App. 575, 580, 246 S.E.2d 801, 805 (1978).

This argument lacks merit.

## VI. Conclusion of Law Regarding Default

Respondents argue next that the trial court erred in its conclusion that there was a default under the promissory note. No new argument is advanced. Instead, respondents simply adopt their argument regarding the court's finding of a default. For the reasons discussed in regards to that argument, in Section

III of this opinion, we hold that this argument is without merit.

### VII. Admission of Evidence of Power of Attorney

Respondents argue next that the trial court "erred in considering over objection the power of attorney of New York Mellon" that "purported to allow [Bank of America] to sign papers concerning foreclosures and related matters." This argument lacks merit.

The appointment of Trustee Services of Carolina, LLC, as substitute trustee was executed by The Bank of New York Mellon through its attorney in fact, the Bank of America. At trial, respondents challenged the documentation establishing that Bank of America had been designated as attorney in fact for Bank of New York Mellon. The trial court agreed to allow petitioner to submit the pertinent document after the hearing, a procedure to which respondents did not object.

On appeal, respondents do not challenge the authority of Bank of America to appoint a substitute trustee on behalf of Bank of New York Mellon. Instead, their argument is narrowly focused on the trial court's "consideration" of the document setting out the attorney in fact relationship between the two banks, which we interpret this as a challenge to the admission of the power of attorney document. Respondents contend that this

document was "over objection," an assertion based on an email in which respondents' counsel wrote that he "would like to express [his] objection to the document[.]" We conclude that respondents have not preserved this issue for our review.

Rule 10(a)(1) or our Rules of Appellate Procedure provides that "to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion."

Assuming, *arguendo*, that counsel's statement in an email constituted a valid objection, respondents did not obtain a ruling on the objection. Moreover, on appeal respondents fail to advance any legal basis for the objection or any argument as to why the document was not admissible. This argument is dismissed.

## VIII. Order Allowing Foreclosure to Proceed

Finally, respondents argue that the trial court "erred in entering the order allowing the foreclosure to proceed." Respondents rely upon their other arguments, and assert that they "have shown through testimony and law that there was not

competent evidence to support the judgment and order in this case." For the reasons discussed above, we disagree.

Respondents also suggest that the trial court erred by failing to determine the amount owed, and argue that respondents "cannot make payment if it cannot be determined how much that payment should be." However, "determination of the amount owed on a debt is beyond the scope of the hearing under G.S. 45-21.16[.]" *In re Foreclosure of Burgess*, 47 N.C. App. 599, 604, 267 S.E.2d 915, 918 (1980).

For the reasons discussed above, we conclude that the trial court's order should be

AFFIRMED.

Chief Judge MARTIN and Judge DILLON concur.

Report per Rule 30(e).