McCULLOUGH, Judge.
Plaintiff Lisa A. Crosby appeals from an order of the trial court, partially granting summary judgment in favor of defendants Select Portfolio Servicing, Inc. and Lime Financial Services, Ltd. For the reasons stated herein, we affirm the order of the trial court.
I. Background
On 30 December 2011, plaintiff Lisa A. Crosby filed a complaint against defendants Select Portfolio Servicing, Inc. ("Select") and Lime Financial Services, Ltd. ("Lime"). Select operated a business as a mortgage servicer and Lime operated a business as a mortgage lender. Plaintiff alleged the following facts in her complaint: In December 2006, plaintiff's mother, Brenda Cornman ("Ms.Cornman"), entered into a loan agreement (the "mortgage") with Lime to purchase a home located at 1725 Seminole Street in Kill Devil Hills, North Carolina ("the home"). The home was purchased by Ms. Cornman as a residence for plaintiff and Ms. Cornman also briefly resided in the home. At the time Ms. Cornman purchased the home, plaintiff provided all the funds. Ms. Cornman and plaintiff agreed that plaintiff would make all payments due on the mortgage and Ms. Cornman gave plaintiff a special power of attorney to communicate with defendants regarding the home.
Sometime after December 2006, Lime utilized Select as the servicer of the mortgage. In 2009, plaintiff fell behind in making the monthly payments due on the mortgage and Select commenced foreclosure proceedings against the home. Plaintiff attempted to work out a loan modification with Select and signed a forbearance agreement, making payments thereunder. Thereafter, Select dismissed the foreclosure and added the fees of the foreclosure to the mortgage.
Plaintiff further alleged that Select subsequently filed another foreclosure action. Plaintiff contacted Select in an attempt to enter into a loan modification. Select sent plaintiff another forbearance agreement which plaintiff signed. Plaintiff made payments and Select failed to review the loan for modification. Once again, Select commenced a foreclosure action. Plaintiff "complained to [Select] that it had failed to act on information provided to it by [plaintiff]." Select claimed that it had not received any such information.
Plaintiff alleged that she "had called and communicated with [Select] on a number of occasions, and various representatives of [Select] had claimed that it had not received her documentation requested by [Select], nor that [Select] had a current telephone number to her." After unsuccessful attempts to communicate with Select, plaintiff's counsel sent a letter to Select "which detailed the failures of [Select] to comply with its own requirements in the Forbearance Agreement." Thereafter, Select halted the foreclosure action but did not provide plaintiff with a forbearance agreement.
Plaintiff alleged that in August 2011, Hurricane Irene had damaged the home, causing minor damage to the roof. Plaintiff did not have enough money to pay for the repairs and the mortgage payment as required. Plaintiff "spoke to an employee of [Select] to inform them of the circumstances and her need to protect the Home ." Plaintiff alleges that although Select agreed that plaintiff could make one and one-half months' payment in September and October of 2011 in order to make up for the missed August payment, Select refused to accept payments made by plaintiff and commenced another foreclosure action.
Plaintiff learned that Select submitted a claim for damages against her homeowner's insurance policy on the home. Plaintiff attempted to contact Select and spoke with a representative on 21 December 2011 who informed her that Select could not contact her because it did not have plaintiff's telephone number. The following day, plaintiff called Select and spoke to a "Mr. Constantine" who informed her that the pending foreclosure sale would take place on 23 December 2011. "Mr. Constantine" also informed plaintiff that an employee of Select had visited the home and claimed it to be abandoned; had found black mold and made a claim against plaintiff's homeowner's insurance; placed a key box on the home so it could access the home at will; and, that Select would take possession of the home and all its contents upon the sale scheduled at 12:00 p.m. on 23 December 2011. Plaintiff alleged the following claims against defendants: fraud, unfair and deceptive trade practices ("UDTP"), breach of contract, invasion of privacy, and injunction.
On 27 November 2013, defendants filed a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure.
A hearing on defendants' motion for summary judgment commenced at the 5 May 2014 Civil Session of Dare County Superior Court, the Honorable J. Richard Parker presiding. On 30 June 2014, the trial court entered an "Order Denying Plaintiff's Motion for Preliminary Injunction and Partially Granting Defendants' Motion for Summary Judgment." The trial court granted partial summary judgment as to plaintiff's claims for fraud, UDTP, invasion of privacy, and to enjoin the foreclosure sale and dismissed those claims with prejudice. The trial court denied defendants' motion for summary judgment as to plaintiff's claim for breach of the 17 June 2010 forbearance agreement.
On 7 July 2014, plaintiff voluntarily dismissed without prejudice the breach of contract claim. On 3 August 2014, plaintiff filed notice of appeal.
II. Standard of Review
"Under Rule 56(c) of the North Carolina Rules of Civil Procedure, summary judgment is appropriate when the record establishes that there are no genuine issues of material fact and that any party is entitled to judgment as a matter of law." Lunsford v. Mills,367 N.C. 618, 622, 766 S.E.2d 297, 301 (2014) (citations omitted). "All facts asserted by the adverse party are taken as true, and their inferences must be viewed in the light most favorable to that party." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC,365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (citation omitted). "A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim ." Lowe v. Bradford,305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations omitted).
"[W]e review the trial court's order de novo to ascertain whether summary judgment was properly entered."Bumpers v. Cmty. Bank of N. Va.,367 N.C. 81, 87, 747 S.E.2d 220, 226 (2013).
III. Discussion
On appeal, plaintiff argues that the trial court erred in granting summary judgment in favor of defendants on the claims of fraud, UDTP, and the tort of invasion of privacy by intrusion into seclusion. We address each claim in turn.
A. Fraud
Plaintiff argues that Select committed actionable fraud by misrepresenting the fact that payments would be credited in the order stated in the forbearance agreements. Plaintiff asserts that this misrepresentation was made with the intent to deceive, thereby inducing plaintiff to continue making payments on the delinquent mortgage.
"[T]he essential elements of actionable fraud are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." Harrold v. Dowd,149 N.C.App. 777, 782, 561 S.E.2d 914, 918 (2002) (citation omitted).
"Allegations of fraud are subject to more exacting pleading requirements than are generally demanded by our liberal rules of notice pleading." Chesapeake Microfilm, Inc. v. Eastern Microfilm Sales & Service, Inc.,91 N.C.App. 539, 542, 372 S.E.2d 901, 903 (1988) (citation and internal quotation marks omitted). Rule 9(b) of the North Carolina Rules of Civil Procedure provides as follows:
(b) Fraud, duress, mistake, condition of the mind.-In all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.
N.C. Gen.Stat. § 1A-1, Rule 9(b) (2013). In Terry v. Terry,302 N.C. 77, 273 S.E.2d 674 (1981), the North Carolina Supreme Court held that "in pleading actual fraud the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." Id.at 85, 273 S.E.2d at 678.
In the present case, plaintiff has alleged facts and circumstances tending to show the following: Select alleges that plaintiff is approximately 17 months behind in her mortgage payments. According to the forbearance agreements provided by Select to plaintiff, the payments would be credited in the following order: to the oldest monthly payment; taxes and insurance advanced; remaining advances; any other delinquent monthly payments; fees. Select has knowingly and willfully misrepresented the fact that payments would be credited in the above order. Plaintiff's payments have not been credited to the damage of plaintiff. Select knew that the representations were false at the time they were made. The false representations were made with the intent to deceive and to induce plaintiff to continue payments for the delinquent mortgage. The misrepresentations did, in fact, deceive plaintiff who, in reliance upon them, continued to make payments and seek a loan modification while her payments were continually misapplied.
After thoughtful review, we find that plaintiff failed to make a claim for fraud with particularity under the Terrytest. Plaintiff failed to specifically allege the time and place the alleged fraudulent representation was made and the identity of the person making the representation. Plaintiff fails to particularly allege how her payments were "not [ ] duly credited to the damage" of plaintiff. Rather, plaintiff alleged the elements of fraud in general and conclusory terms. See Sharp v. Teague,113 N.C.App. 589, 597, 439 S.E.2d 792, 797 (1994) (stating that "[m]ere generalities and conclusory allegations of fraud will not suffice"). Accordingly, we affirm the order of the trial court, granting summary judgment in favor of defendants on the claim of fraud.
B. Unfair and Deceptive Trade Practices
Next, plaintiff argues that the trial court erred in entering summary judgment in favor of defendants on the claim of UDTP. We disagree.
N.C. Gen.Stat. § 75-1.1(a) (2013) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." "In order to prevail under [N.C. Gen.Stat. § 75-1.1(a) ] plaintiffs must prove: (1) defendant committed an unfair or deceptive act or practice, (2) that the action in question was in or affecting commerce, (3) that said act proximately caused actual injury to the plaintiff." Canady v. Mann,107 N.C.App. 252, 260, 419 S.E.2d 597, 602 (1992). "[W]hether an action is unfair or deceptive is dependent upon the facts of each case and its impact on the marketplace." Norman Owen Trucking, Inc. v. Morkoski,131 N.C.App. 168, 177, 506 S.E.2d 267, 273 (1998) (citations and internal quotation marks omitted). "[A]n act or practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act or practice is deceptive if it has the capacity or tendency to deceive." Harty v. Underhill,211 N.C.App. 546, 552, 710 S.E.2d 327, 332 (2011) (citations omitted).
"While the scope of 'commerce' under N.C. Gen.Stat. § 75-1.1(a) is broad, 'it is not intended to apply to all wrongs in a business setting.' " Phelps Staffing, LLC v. C.T. Phelps, Inc.,--- N.C.App. ----, ----, 740 S.E.2d 923, 928 (2013) (citation omitted). "Our case law establishes that [s]imple breach of contract ... do[es] not qualify as unfair or deceptive acts, but rather must be characterized by some type of egregious or aggravating circumstances before the statute applies." Supplee v. Miller-Motte Bus. College, Inc.,---N.C.App. ----, ----, 768 S.E.2d 582, 598 (2015) (citation and internal quotation marks omitted). Egregious or aggravating circumstances "must be alleged and proved" before N.C.G.S. § 75-1.1(a)'s provisions may take effect. Phelps,--- N .C.App. at ----, 740 S.E.2d at 928 (citation omitted). "[I]t is well recognized ... that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." Watson Elec. Constr. Co. v. Summit Cos., LLC,160 N.C.App. 647, 657, 587 S.E.2d 87, 95 (2003) (citation omitted).
In the case sub judice,plaintiff alleged the following in support of her UDTP claim:
41. [Select's] actions and false representations were in or affecting commerce and constitutes unfair or deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes, as well as actions constituting unfair debt collection practices under Chapter 75 of the North Carolina General Statutes including threats of wage garnishment of Ms. Crosby and her husband.
We first note that plaintiff failed to specifically allege what act or practice of defendants plaintiff is referring to as the basis of her UDTP claim. The general misrepresentation alleged in her complaint is that defendants failed to comply with the terms of the forbearance agreements. Taking the evidence in the light most favorable to plaintiff, plaintiff's forecasted evidence merely stated that defendants did not apply plaintiff's payments according to the terms of the forbearance agreements, a basic breach of contract claim. Plaintiff did not allege before the trial court any circumstances independent of the forbearance agreement that would support a conclusion that defendants' actions amounted to egregious or aggravating circumstances. Therefore, we hold that there were no genuine issues of material fact and that defendants were entitled to summary judgment on this claim.
C. Invasion of Privacy
In her last argument on appeal, plaintiff asserts that the trial court erred by granting summary judgment in favor of defendants on the claim of invasion of privacy. We disagree.
The tort of invasion of privacy by intrusion into seclusion has been recognized in North Carolina and is defined as the intentional intrusion physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... [where] the intrusion would be highly offensive to a reasonable person. The kinds of intrusions that have been recognized under this tort include 'physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another.
Keyzer v. Amerlink, Ltd.,173 N.C.App. 284, 288, 618 S.E.2d 768, 771 (2005) (citations and quotation marks omitted).
In her complaint, plaintiff alleged that Select, through an agent, "physically intruded upon the private property of [plaintiff], and such act further intruded upon her solitude, seclusion, private affairs or personal concerns." She further alleged that "[t]he intrusion caused by [Select] was intentional and a reasonable person, under the same or similar circumstances, would be highly offended by such intrusion." A review of the record reveals that on 22 December 2006, Ms. Cornman, through plaintiff, executed and delivered to Lime a promissory note in the amount of $200,000.00 and a Deed of Trust, to secure payment of the note, to a trustee. This granted Lime a lien upon the property. Select was in possession of the note, is the current holder of the note, and the assignee of the Deed of Trust. Plaintiff admitted in her complaint that in August of 2011, Hurricane Irene had caused minor damage to the roof of her home. Plaintiff contacted an employee of Select to inform them of the damage.
Plaintiff directs our attention to the affidavit of Zane Barton, a manager with Select, and argues that it establishes that Select entered her home. Mr. Barton's affidavit provides as follows:
14. The Loan Records reflect that on or about October 4, 2011, in preparation for a foreclosure sale of the property, [Select] sent an inspector to the property from Safeguard, who reported that the property was vacant, and that it had visible damage possibly caused by Hurricane Irene....
15. On November 18, 2011, an inspector from Safeguard Properties entered the property to inspect the home and assess the property damage to the exterior and interior of the home....
16. The Loan Records reflect that in addition to the exterior damage, the inspector found interior water damage caused by a leaking water heater and documented that in the areas where water had leaked there was mold growth....
17. On December 5, 2011, pursuant to its rights under the Deed of Trust, and based on information obtained by the Safeguard inspector who reported the property was vacant and damaged, [Select] filed an insurance claim on the borrower's behalf, and took action to repair, preserve, and secure the property....
Considering the evidence in the light most favorable to plaintiff, it is clear that Select's agent entered the property to inspect the home and assess the property damage to the home. However, plaintiff's forecast of evidence has failed to establish how the physical intrusion of Select's agent would be highly offensive to a reasonable person. It is undisputed that the Deed of Trust in the present case provided that "[i]n the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower." After being notified of damage to the property by plaintiff and finding that no claim was promptly made, Select acted within the rights of the Deed of Trust to inspect the property and make proof of loss. Thus, we hold that the circumstances of the intrusion would not be so highly offensive to the reasonable person as to constitute an invasion of privacy claim and affirm the holding of the trial court granting summary judgment in defendants' favor as to this claim.
IV. Conclusion
We affirm the trial court's granting of defendants' motion for summary judgment on the claims of fraud, UDTP, and invasion of privacy.
AFFIRMED.
Judges STEELMAN and STEPHENS concur.
Report per Rule 30(e).
Opinion
Appeal by plaintiff from order entered 30 June 2014 by Judge J. Richard Parker in Dare County Superior Court. Heard in the Court of Appeals 22 April 2015.